**UNITED STATES of America ex rel. John FALLON, et al., Plaintiff–Appellee,**

v.

**ACCUDYNE CORPORATION and Alliant Techsystems, Inc., Defendants–Appellants.**

No. 96–1474.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1996.

Decided Oct. 3, 1996.

Douglas Letter, Michael E. Robinson (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, Mark A. Cameli, Office of the United States Attorney, Madison, WI, for the U.S.

Sandra J. Strebel, Jeffrey A. Schwarz, Daniel I. Davidson (argued), Spiegel & McDiarmid, Washington, DC, Dennis M. Grzezinski, Milwaukee, WI, Bradley S. Weiss, Washington, DC, for John Fallon, Robert Bradley, Jr., Pamela Carr, Kris Sheridan, Kelly Fallon and Atlantic States Legal Foundation.

Gary L. Prior (argued), Craig H. Zimmerman, James A. Pardo, McDermott, Will & Emery, Chicago, IL, E. Grey Lewis, McDermott, Will & Emery, Washington, DC, for Accudyne Corp.

Gary L. Prior, Craig H. Zimmerman, James A. Pardo, McDermott, Will & Emery, Chicago, IL, Kevin C. Potter, Brennan, Steil, Basting & MacDougall, Madison, WI, for Alliant Techsystems, Inc.

Robert K. Huffman, Peter B. Hutt, III, Miller & Chevalier, Washington, DC, for amici curiae.

Before WOOD, JR., EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Accudyne Corporation supplies military materiel under 27 contracts with the Department of Defense. Six relators filed this *qui tam* action under the civil provisions of the False Claims Act, 31 U.S.C. §§ 3729–3733. Count I of the complaint alleged that Accudyne failed to test properly some control and sensor electronic assemblies for the Modular Pack Mine System and supplied false data about their conformity to specifications. Count II contended that Accudyne falsely certified (by submitting invoices) that it was in compliance with all legal requirements, when it was not living up to its obligations under the environmental laws. Count II sought to explore uncharted territory. Accudyne protested both the legal and the factual sufficiency of the relators' theories, but the district judge declined to dismiss or grant summary judgment on Count II. 880 F.Supp. 636 (1995); 921 F.Supp. 611 (1995).

The Attorney General took over the prosecution of Count I, see 31 U.S.C. § 3730(b)(4)(A), but left Count II in the hands of the relators. After two years of motions, discovery, and other maneuvering, the parties settled the case *en bloc*. Accudyne agreed to pay $12 million to the United States, which agreed to remit 22 percent of this recovery ($2,640,000) to the relators under 31 U.S.C. § 3730(d). The relators agreed to accept this award as full compensation for their services. Accudyne also "agree[d] to pay Relators' reasonable expenses, attorneys' fees and costs in an amount and manner to be determined by the Court in accord with the provisions of 31 U.S.C. § 3730(d)(1), (2)." On July 12, 1995, the district court dismissed the case in reliance on the settlement, and the relators soon filed a request for some $1.5 million in fees and costs.

What happened next was extraordinary: Accudyne told the district court that the only "reasonable" fee is nominal because the relators would have lost had they litigated Count II to judgment. Having settled the

case, and therefore surrendered (in exchange for some valuable concession, no doubt) its opportunity to receive a decision on the merits, Accudyne offered its view of the merits as a reason to avoid paying the attorneys' fees it had agreed to pay. A saying about having one's cake and eating it too comes to mind. (So does: "That takes the cake!") Accudyne contends that (a) all *qui tam* suits violate Article II § 2 cl. 3 of the Constitution because relators are not appointed as either "Officers of the United States" or "inferior Officers"; (b) *qui tam* suits offend the separation of powers; (c) "punitive" recoveries for false claims violate the due process clause of the fifth amendment; (d) relators lack standing to sue (though they aren't parties at all, see *United States ex rel. Hall v. Tribal Development Corp.*, 49 F.3d 1208 (7th Cir. 1995)); (e) the False Claims Act cannot be used to enforce the environmental laws (which on Accudyne's view "preempt" the False Claims Act); (f) the submission of an invoice is not a "claim" about environmental matters; (g) the lack of provable injury to the United States means that no recovery under the False Claims Act is possible; (h) its environmental problems were public knowledge, yet none of these relators was an "original source" of the information and therefore none is entitled to prosecute the case; and (i) the military contracts did not require compliance with environmental laws. Accudyne may have more arguments, but these, at least, are set out as separate headings in its appellate brief. For good measure Accudyne gave five reasons why, in its view, $1.5 million is excessive; (j) counsel should have charged lower hourly rates; (k) the relators should have used counsel from Janesville, Wisconsin, where Accudyne's plants are located, rather than from Milwaukee and Washington, D.C.; (*l*) the lawyers' bills were insufficiently detailed to permit inquiry into which services were necessarily rendered on which claims; (m) it had not had

enough discovery into which services were performed and why; and (n) counsel's total remuneration would exceed the reasonable fee specified in Rule 1.5 of the ABA's Model Rules of Professional Conduct.

The district judge was not impressed by these 14 arguments, individually or collectively, and awarded more than $1.2 million in fees and costs. We *are* impressed—impressed that Accudyne's behavior is outrageous. This case was settled; Accudyne did not appeal from the judgment on the settlement, and therefore has no business invoking the defenses it could have raised had the case been litigated to judgment. Accudyne could have bargained for a settlement limited to Count I. It tells us that the Department of Justice was interested only in Count I and thought Count II worthless. If so, Accudyne could have paid $12 million to settle Count I while reserving its right to litigate (and avoid attorneys' fees on) Count II. This strategy would have entailed taking the risk that the relators would win and recover something on top of the $12 million (plus attorneys' fees beyond those incurred to the date of settlement). But Accudyne didn't take the risk of loss and therefore could not hope for the thrill of victory. It settled both counts for a flat payment, which was not allocated between claims. What is more, Accudyne promised as part of the settlement to pay the relators' reasonable fees and costs. The relators could have released their claim to fees, *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); the settlement could have been silent on fees, leaving relators to look to their statutory entitlement; instead Accudyne affirmatively promised to pay reasonable costs and fees. This poses the question whether the bill is reasonable, but not the question whether the United States (through the relators) "prevailed" on Count II. Plainly it did, to the tune of some unknowable portion of $12 million.* Accu-

---

* Displaying the innumeracy so common at the bar, Accudyne's legal team contends that the allocation is knowable, even though not specified. The argument runs like this. Under § 3730(d), if the Attorney General takes over an action, the relator receives an award between 15 percent and 25 percent of the proceeds; if the Attorney General does not take over, then the relator is entitled to

25 percent to 30 percent of the proceeds. We know that these six relators received 22 percent of the $12 million; hence the entire recovery must have been based on Count I. This is nonsense—first because in settlement the relators might have surrendered their statutory entitlement to avoid the risk of getting nothing, and second because Accudyne's lawyers did not do

dyne cannot demand the benefits of a favorable outcome in litigation without taking the risk of loss. It would not only undermine parties' incentives to settle but also squander judicial resources to permit a litigant to weasel out of a bargain as Accudyne is trying to do.

■ The rule that prohibits continuing litigation of matters resolved by settlement, see *Hudson v. Chicago Teachers Union*, 922 F.2d 1306, 1312 (7th Cir.1991); *Geaney v. Carlson*, 776 F.2d 140, 141–42 (7th Cir.1985), has an exception: the parties retain their right (and the judges their obligation) to ensure that federal subject-matter jurisdiction is present. *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Lucille v. Chicago*, 31 F.3d 546 (7th Cir.1994); *Shores v. Sklar*, 885 F.2d 760, 762 (11th Cir.1989) (en banc). Suppose two citizens of the same state settle a dispute based on state law and provide that the court may award attorneys' fees. An application to a federal court for fees should be rejected on the ground that no statute creates jurisdiction over such a claim (and it is not clear that a statute could do so, given the limitations of Article III). Accudyne contends that the district court had to reject the relators' fee petition for just this reason. According to Accudyne, the district court lacked subject-matter jurisdiction over Count II.

After Congress gave supplemental jurisdiction a statutory basis in 28 U.S.C. § 1367, it is unclear what it means to assert that a court lacks jurisdiction over one count of a complaint. No one doubts that Count I was within the court's adjudicatory competence; the *suit* therefore was within the district court's power to decide, see *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir.1996); and Accudyne concedes that the relators are entitled to some compensation for fees and costs incurred before the Department of Justice took control of Count I. So a lack of original jurisdiction over Count

II would not necessarily be fatal. But what is the problem to begin with? Congress authorized *qui tam* litigation in § 3730(b), and § 3732(a) grants subject-matter jurisdiction for false-claims suits—as if that were needed in light of the general grant of federal-question jurisdiction, 28 U.S.C. § 1331, and the special grant of jurisdiction for civil litigation in which the United States is the plaintiff, 28 U.S.C. § 1345. The possibility that § 3730(b) is unconstitutional does not knock out subject-matter jurisdiction. To do that, Accudyne would have to show that §§ 1331, 1345, and 3732(a) are unconstitutional, and it hasn't even tried. Accudyne is oblivious to the fundamental distinction between jurisdiction and the merits. Unless the relators' claim was weaker than frivolous (and the district court's decisions show that it was not), the court had jurisdiction even if Accudyne would have prevailed in the end. See *Hagans v. Lavine*, 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–80, 39 L.Ed.2d 577 (1974); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Crowley Cutlery Co. v. United States*, 849 F.2d 273 (7th Cir. 1988).

Now we grant that § 3730(e)(4)(A) offers Accudyne some comfort. It says:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

This subparagraph uses the magic word "jurisdiction." It bears only on argument (h) in the list above; none of the others has any jurisdictional significance. And of course contention (h) was settled along with the rest. The district court ruled against Accudyne on both prongs: it held that the firm's

---

their math. Let us suppose the relators received the minimum 25 percent cut of any recovery on Count II. What is the maximum this recovery can be, provided the relators also got the statutory minimum 15 percent of any proceeds from Count I? In other words, $0.15x + 0.25y$ equals $0.22(x+y)$, where x is the recovery on Count I and y the recovery on Count II. When $x+y$ equals \$12 million, y equals \$8.4 million. So if all statutory requirements were observed Count II was worth anywhere between \$0 and \$8.4 million.

environmental problems had not been disclosed in one of the listed ways, and that at all events one of the relators was "an original source of the information." 921 F.Supp. at 624–26. Instead of sticking to its guns, Accudyne capitulated and cannot now ask us to address the subject—any more than the defendant in a diversity case could litigate (and lose) a dispute about the citizenship of the parties, settle, and then refuse to pay on the theory that it was entitled to another go at the question whether the parties were really citizens of different states. See *Swift & Co. v. United States*, 276 U.S. 311, 326, 48 S.Ct. 311, 315, 72 L.Ed. 587 (1928) (holding that a jurisdictional issue resolved by a consent decree is not open to collateral attack). Cf. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment.").

For what it is worth, we doubt that § 3730(e)(4)(A) uses the word "jurisdiction" in the sense of adjudicatory power, which is conferred by §§ 1331, 1345, and 3732(a) rather than "this section" (sec. 3730). In context, the word appears to mean that once information becomes public, only the Attorney General and a relator who is an "original source" of the information may represent the United States. This does not curtail the categories of disputes that may be resolved (a real "jurisdictional" limit) but instead determines who may speak for the United States on a subject, and who if anyone gets a financial reward. "Jurisdiction" is a notoriously plastic term. See *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077–78 (7th Cir.1987). It is therefore not surprising that the Supreme Court had held that a similar reference to jurisdiction in the Norris–LaGuardia Act, 29 U.S.C. §§ 101, 104, limits remedies rather than subject-matter jurisdiction, see *Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 444–46, 107 S.Ct. 1841, 1850–51, 95 L.Ed.2d 381 (1987)—and, more to the point, that a lack of jurisdiction does not necessarily prevent a court from awarding attorneys' fees. See *Willy v. Coastal Corp.*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); cf. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393–98, 110 S.Ct. 2447, 2454–57, 110 L.Ed.2d 359 (1990).

Contentions (j) through (n) were all that remained before the district court after the settlement. We do not think it necessary to discuss these at length. Accudyne's position is inconsistent with *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir.1982); and numerous other opinions. This was a big-stakes case with potentially difficult legal and factual issues. Accudyne hired a large and expensive law firm from Chicago; it can't grouse that the relators also engaged out-of-town commercial litigators whose hourly rates are normal for commercial cases. People spending their own money do this; the practice passes the market test that governs awards of statutory fees. That the relators' lawyers may be richly rewarded in the end is no skin off Accudyne's nose. A recovery of statutory attorneys' fees belongs to the client, not the lawyer, see *Venegas v. Mitchell*, 495 U.S. 82, 87–88, 110 S.Ct. 1679, 1682–83, 109 L.Ed.2d 74 (1990); *Central States Pension Fund v. Central Cartage Co.*, 76 F.3d 114 (7th Cir. 1996), so only the relators are entitled to assert an objection to excessive compensation—and the relators, who offered a bonus to induce counsel to accept a risky case from which they might have emerged empty-handed, are not complaining. Accudyne is entitled to a judicial determination that the amount of fees imposed *on it* is reasonable. The amount Accudyne has been ordered to pay does not include any multiplier for the attorneys' risk of non-recovery. See *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir.1992). We hold that the district judge did not abuse his discretion in assessing fees and costs. Under both the statute and the settlement the relators are entitled to compensation for the fees and costs incurred in defending this appeal; they have 14 days to submit an appropriate statement.

AFFIRMED.