UNITED STATES of America, ex rel.
Gary R. EITEL, Plaintiff,

v.

Roy D. REAGAN, Defendants.

No. Civ 97–169–TUC–WDB.

United States District Court,
D. Arizona.

Dec. 14, 1998.

Stuart Michael Gerson, Epstein Becker & Green PC, Washington, DC, for Roy D. Reagan.

Gerald K. Smith, John P. Frank, Randall Papetti, Lewis & Roca, Phoenix, AZ, Michael W. Carmel, Phoenix, AZ, Levi J. Smith, Ransom Blackman & Weil, Portland, OR, for T & G Aviation Inc., William W. Grantham.

Gerald K. Smith, John P. Frank, Lewis & Roca, Phoenix, AZ, Levi J. Smith, Ransom Blackman & Weil, Portland, OR, for Sergio Tomassoni.

Gerald K. Smith, John P. Frank, Lewis & Roca, Phoenix, AZ, Michael W. Carmel, Phoenix, AZ, Levi J. Smith Ransom Blackman & Weil, Portland, OR, for William W. Grantham.

Michael Richard Sullivan, Sullivan Law Corporation, Los Angeles, CA, Stephanie Lynne Buser, John Joseph Fausti, Law Offices of John J. Fausti, Washington, DC, for Hawkins & Powers Aviation, Inc.

Michael Richard Sullivan, Sullivan Law Corporation, Los Angeles, CA, for Gene A Powers, James A. Venable.

Michael Richard Sullivan, Sullivan Law Corporation, Los Angeles, CA, Shaun Hanson, Bolte Hanson & Hales, Temecula, CA, for Hemet Valley Flying Service.

Stanley Eugene Clark, Redmond, OR, Leonard Charles Herr, Dooley Herr & Williams, L.L.P., Visalia, CA, for TBM Incorporated.

Stanley Eugene Clark, Redmond, OR, for Henry C. Moore.

Michael W. Robinson, Venable Baetjar & Howard, McLean, VA, Vernon M Winters, Cooley Godward, L.L.P., San Francisco, CA, David T Stitt, Phoenix, AZ, Maynard C. Craig, Michael Thomas Shepherd, Craig & Shepherd, Chico, CA, Ronald H. Hoevet, Hoevet & Snyder PC, Portland, OR, for Aero Union Corporation.

Michael W. Robinson, Venable Baetjar & Howard, McLean, VA, Michael Traynor, Vernon M Winters, Cooley Godward, L.L.P., San Francisco, CA, David T Stitt, Phoenix, AZ, Maynard C. Craig, Michael Thomas Shepherd, Craig & Shepherd, Chico, CA, Ronald H. Hoevet, Hoevet & Snyder PC, Portland, OR, for Dale P. Newtown.

Jennifer Christine Guerin, United States Attorney, Tucson, AZ, Michael F. Hertz, United States Department of Justice, Civil Division, Washington, DC, Stephen D. Altman, Carolyn G.Mark, Elizabeth Hack, U.S. Department of Justice, Washington, DC, Neil

J. Evans, U.S. Attorney's Office, Portland, OR, for United States of America.

Gerald K. Smith, John P. Frank, Randall Papetti, Lewis & Roca, Phoenix, AZ, Michael W. Carmel, Phoenix, AZ, Levi J. Smith, Ransom Blackman & Weil, Portland, OR, for T & G Aviation Inc.

WILLIAM D. BROWNING, Senior District Judge.

Both the United States and the Defendants contend that Eitel does not have standing as a *qui tam* relator to represent the United States. Eitel's standing was raised as a defense by the United States in their response to Eitel's December 12, 1997 Motion for Summary Judgment on Supplemental Complaint and in their Cross Motion for Summary Judgment, as well as by the Defendants in their responses to Eitel's April 8, 1998 Motion for Partial Summary Judgment and in TBM's May 8, 1998 Cross–Motion for Summary Judgment, in which several other Defendants joined. The Court concluded that it would be most efficient to resolve that issue before proceeding with other unrelated pending motions. Supplemental briefing on the issue of Eitel's status was requested and submitted, and oral argument was heard on November 20, 1998.

### I. Procedural Background

The initial *qui tam* Complaint was filed by Eitel on behalf of the United States on April 22, 1994, pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* The Complaint named the following Defendants: Roy Reagan, T & G Aviation, Inc., Sergio Tomassoni, William Grantham, Hawkins & Powers Aviation, Inc., Gene Powers, Hemet Valley Flying Service, James Venable, TBM, Inc., Henry Moore, Aero Union Corp., and Dale Newton. On June 1, 1995, the United States declined to intervene in the action. All defendants filed motions to dismiss, which were granted and judgment entered by Judge Jones of the District of Oregon on August 16, 1995. Eitel conceded that the Complaint was based on publicly disclosed allegations, and the Court found that Eitel was not an original source of the information, and therefore, based on 31 U.S.C. § 3730(e)(4)(A), the court did not have subject matter jurisdiction over his complaint.

Eitel appealed Judge Jones' ruling to the Ninth Circuit Court of Appeals. While on appeal, the United States sought leave to intervene in the action. On February 6, 1997, the Ninth Circuit granted a limited remand to the district court for the purpose of an indicative ruling on whether the United States could intervene in the case. While on appeal, the case was transferred to the District of Arizona in March 1997, and this Court granted the United States' Motion to Intervene. Once the United States was granted leave to intervene, Eitel filed a motion at the Ninth Circuit to vacate judgment and for remand, arguing that the United States' intervention would cure the previous jurisdictional defect that formed the basis of Judge Jones' dismissal, thereby mooting the appeal. The United States concurred in the request for a remand, but not the request to vacate Eitel's dismissal from the action. In a June 4, 1997 Order, the Ninth Circuit granted Eitel's motion for remand and denied his motion to vacate the district court's decision. The Ninth Circuit judgment entered that same day states:

APPEAL FROM the United States District Court for the District of Oregon (Portland).

THIS CAUSE came on to be heard on the Transcript of the Record from the United States District Court for the District of Oregon (Portland) and was duly submitted.

ON CONSIDERATION WHEREOF, It is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is remanded.

(6/4/97 Ninth Cir. J.)

The United States filed an Amended Complaint on January 30, 1998, naming only the following Defendants: Roy Reagan, T & G Aviation, Inc., Hawkins & Powers Aviation, Inc., Hemet Valley Flying Service, TBM, Inc., and Aero Union Corp.

### II. Discussion

*NINTH CIRCUIT REMAND*

The parties present three different characterizations of the Ninth Circuit's 1997 remand. The United States and Defendant T

& G treat it as if the appeal was never reached by the Ninth Circuit and therefore the district court ruling stands, the other Defendants state that the Ninth Circuit denied the appeal (affirming the district court), and Eitel contends that the Ninth Circuit ruled on the appeal and remanded the action, returning the case to the district court in the procedural posture prior to dismissal.

Eitel relied on the Supreme Court's *United States v. Munsingwear* case to support his Ninth Circuit motion to vacate and remand for mootness, and continues to use it to support his argument that the remand returned the case to pre-dismissal status, as if the Ninth Circuit had vacated the district court order and judgment. *See United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950). *Munsingwear* states that if a case becomes moot on appeal, the established procedure is to request that the appellate court vacate the prior judgment and remand the case for dismissal by the trial court. *Id.* at 39, 71 S.Ct. 104. However, the United States' requested intervention would not moot the whole case,[1] nor require dismissal of the action, merely remand. Even if the above facts did not distinguish the instant case from *Munsingwear*, the Ninth Circuit declined to follow the *Munsingwear* framework, advocated by Eitel, when it denied the motion to vacate. This Court cannot now adopt Eitel's argument and treat the case as if the August 16, 1995 dismissal was vacated pursuant to *Munsingwear*, because this argument was presented to the Ninth Circuit and summarily rejected.

The Court finds the Ninth Circuit's remand unclear, as evidenced by the parties three different interpretations of the order and judgment. The Ninth Circuit's Order addressed only Eitel's motion to remand and to vacate (and an unrelated motion), and not the merits of the appeal. The order denied the motion to vacate the district court's decision, but did not actively affirm the district court ruling. In correlation, the judgment stated solely that the district court judgment was remanded, without indicating the procedural posture upon remand. This Court is reluctant to presume an affirmation when none is articulated, yet the Ninth Circuit

pointedly rejected the other traditional option for a remand on the merits of an appeal—to vacate and reverse the lower court's decision. Therefore, the Court looks solely to the language given in the order and judgment, and finds that the Ninth Circuit did not reach the merits of the appeal, but maintained, without affirming, Judge Jones' ruling and remanded the case to allow the United States' intervention with the dismissal of Eitel intact.

*LAW OF THE CASE*

▪ The doctrine of the law of the case generally precludes a court from reconsidering an issue previously decided in the same case by the same court or a higher court. *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.1993). Although this doctrine is discretionary, the Ninth Circuit has found reconsideration of a previously decided issue appropriate only when there has been an "intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir.1995) (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir.1991); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, § 4478, at 790). Generally, and in the *Merritt* case cited above, the second exception is quoted as requiring "substantially different" evidence. *See Merritt v. Mackey*, 932 F.2d at 1320 & n. 2. The law of the case applies to issues treated summarily by a court, *see Leslie Salt Co.*, 55 F.3d at 1392 (quoting *Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131, 1135 (D.C.Cir.1994)), as well as issues decided by necessary implication. *Id.* at 1393 (citing *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 687 (9th Cir.1988) (quoting *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir.1982))).

▪ Eitel makes a weak argument unsupported by any authority that because Judge Jones' ruling was based solely on jurisdiction and not the merits of the case, and that he was denied discovery to prove his case, application of the law of the case doctrine is

---

1. Whether government intervention mooted even the issue on appeal—the district court's jurisdiction over Eitel's claims—is disputed by the parties and is before the Court today for resolution.

precluded. The Court disagrees with this unsupported contention.

■ Eitel makes additional arguments that do fall within the above quoted exceptions. First, he argues that the decision was clearly erroneous resulting in a manifest injustice. In his December 15, 1997 Memorandum of Points and Authorities in Support of *Qui Tam* Plaintiff's Motion for Summary Judgment on Supplemental Complaint ("December 1997 Memorandum"), Eitel argues that the decision is clearly erroneous because Judge Jones overlooked a determinative piece of evidence, Thomas Miller's declaration. Eitel admits that this evidence was submitted to Judge Jones prior to the August 16, 1995 ruling. The fact that Judge Jones did not address the Miller declaration in his written ruling is not conclusive of a finding that he did not accord it as much weight as warranted.[2] The law of the case doctrine may attach to issues treated summarily and by necessary implication, thus, the fact that Judge Jones did not specifically acknowledge the declaration does not foreclose application of the doctrine. *See Leslie Salt Co.,* 55 F.3d at 1392–93. Further, this Court has reviewed the declaration of Thomas Miller, (12/12/97 Decl. Sprung, re Mot. Summ. J. on Suppl. Compl., Ex. 4), and finds that the content of it does not mandate a deviation from Judge Jones' ruling, which the Court finds to be thorough and well reasoned. *See supra* note 2.

■ Second, Eitel argues that he has obtained additional evidence since the August 1995 ruling, which was previously unavailable due to a stay on discovery. The items of new evidence are: (1) the October 31, 1996 Amended Statement of Facts in the related criminal case, stating that the criminal investigation followed Eitel's January 1993 hotline complaint, (12/12/97 Decl. Sprung, re Mot. Summ. J. on Suppl. Compl., Ex. 14); (2) the November 25, 1997 deposition of Ray Smith,

(3/3/98 Eitel Reply Mot. Summ. J. on Suppl. Compl., Ex. 17); and (3) the December 2, 1997 deposition of Thomas Miller, (3/3/98 Eitel Reply Mot. Summ. J. on Suppl. Compl., Ex. 13). The Court has reviewed the above evidentiary submissions and finds that they are not "substantially different" evidence, and that consideration of them would not mandate a change in the current ruling regarding Eitel's status as an original source.

Eitel has not established that any exceptions to the law of the case doctrine apply, and therefore, Judge Jones' decision, that Eitel is not an original source and not a proper relator absent the United States' intervention, remains the law of the case. If the United States' intervention does not alter that ruling then the Court does not have jurisdiction over Eitel's claims.

*IMPACT OF THE UNITED STATES' INTERVENTION*

Judge Jones' determination that the court did not have jurisdiction over Eitel's complaint was based on the following statutory provision from the False Claims Act (FCA):

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

Eitel argues that the United States' intervention cures any § 3730(e)(4)(A) jurisdictional defect with respect to his claims. In his December 1997 Memorandum, Eitel argues that intervention moots the original source statutory requirement, and therefore,

2. The Court has thoroughly reviewed Eitel's June 30, 1995 Memorandum in Opposition to Defendant's Motions to Dismiss as submitted to the District Court of Oregon, as well as the June 12, 1995 declaration of Thomas Miller that was attached as Exhibit One. The Miller declaration was not referenced even once in the Opposition Memorandum, thus, no explanation was offered as to how its contents support Eitel's contention that he is an original source. Looking solely at the declaration with no external guidance from Eitel, the content of it appears unrelated to this case, particularly as it is captioned for a different case and does not mention any Defendants named in this case. Thus, the Court finds no rational basis for Eitel's contention that Judge Jones' decision was clearly erroneous for failing to specifically acknowledge this piece of evidence.

Judge Jones' decision.[3] This argument is primarily based on the language in the statute which establishes a jurisdictional bar for actions based on publicly disclosed allegations "unless the action is brought by the Attorney General *or* the person bringing the action is an original source." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). Eitel contends that government intervention satisfies the "brought by the Attorney General" jurisdictional provision, obviating the original source requirement.

There are very few cases which address the issue faced by the Court, and there is only one published circuit opinion that makes a holding on the precise point. In *Federal Recovery Services, Inc.*, the United States elected to intervene against defendant Crescent City but declined intervention against defendant Blue Cross & Blue Shield of Arkansas. *See Federal Recovery Services, Inc. v. United States*, 72 F.3d 447, 449 n. 1 (5th Cir.1995). Both Crescent City and Blue Cross filed motions to dismiss the relator's claims for lack of subject matter jurisdiction, based on § 3730(e)(4)(A), arguing that Federal Recovery Services (FRS) was not a proper relator because the action was based on public disclosures and FRS was not an original source. *See id.* at 449, 450 n. 2. The district court granted both of these motions and FRS appealed only the dismissal of the claims against Crescent City, the party against whom the United States had intervened. *See id.* FRS argued that the intervention of the United States against Crescent City cured any jurisdictional defect attached to his claims. *See id.* at 452. The court found that to adopt that interpretation of the statute would inhibit one of the goals of the False Claims Act, as evidenced by the legislative policy and history underlying the Act, to prevent "parasitic lawsuits." *See id.* Under FRS's interpretation of the statute, "the United States' intervention would cure the jurisdictional defects in all suits, even those brought by individuals who discovered the defendant's fraud by reading about it in the morning paper." *Id.* The Fifth Circuit rejected this interpretation and held that the United States may intervene despite juris-

dictional defects in the relator's claims, but the intervention does not create jurisdiction for the relator's improper claims. *See id.*

This Court finds the Fifth Circuit holding persuasive. The Ninth Circuit also recognizes that "the original source requirements of § 3730(e)(4) are intended to bar parasitic suits through which a plaintiff seeks a reward even though he has contributed nothing significant to the exposure of the fraud." *United States ex rel. Devlin v. State of California*, 84 F.3d 358, 362 (9th Cir.1996). As discussed below, other courts have also followed the reasoning of *Federal Recovery Services*, although less directly.

The Western District of Kentucky cited and followed *Federal Recovery Services* in a 1996 decision on a similar point, but took a different approach. *See United States ex rel. Burns v. A.D. Roe Co., Inc.*, 919 F.Supp. 255, 259 (W.D.Ky.1996). In *Burns*, after the United States' intervention, the defendants sought dismissal of the action for lack of subject matter jurisdiction, arguing that the relator was not an original source. *Id.* at 256. The court never considered that the United States' intervention would remove the relator's jurisdictional bar under § 3730(e)(4)(A). *See generally id.* After determining that the relator was not an original source and must be dismissed, the court went on to analyze whether the United States could maintain the action. *Id.* at 258–59. Based partly on *Federal Recovery Services*, the Court found that dismissal of the relator for lack of subject matter jurisdiction did not preclude the government from proceeding with the action. *Id.* at 258–59.

The Fourth Circuit applied an interpretation similar to *Federal Recovery Services* without having to reach the precise issue or expressly stating so in *United States ex rel. Siller v. Becton Dickinson & Co. See United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339 (4th Cir.1994). The District Court of Maryland dismissed the United States for untimely intervention, and simultaneously dismissed the relator after finding that the action was based on public disclo-

---

**3.** Because Eitel conceded prior to Judge Jones' ruling that the action was based on public disclosures the first prong of the statute is not in

contention. (6/30/95 Mem. Opp'n Defs.' Mot. Dismiss, at p. 19 n. 4.)

sures and he was not an original source. *See United States ex rel. Siller v. Becton Dickinson & Co.*, 813 F.Supp. 410 (D.Md.1993), *rev'd*, 21 F.3d 1339 (4th Cir.1994). The Fourth Circuit reversed both of the dismissals and remanded the case for further proceedings. *See Siller*, 21 F.3d at 1355. The circuit court's opinion first determined that the dismissal of the United States based on the district court's reasoning was improper and required reversal. *See id.* at 1346–47. The court did not automatically re-instate the relator by finding that the jurisdictional bar embodied in § 3730(e)(4)(A) was not applicable if the United States was a proper intervener. *See id.* at 1347. In fact, the court did not even mention that possibility, rather, it went through the jurisdictional analysis under § 3730(e)(4) and determined that the relator satisfied the original source requirement. *See id.* at 1347–1355.

Eitel relies on language from a Seventh Circuit case to contradict the reasoning in the above cases and to support his argument that the Court has jurisdiction over all the claims in this case. In *United States ex rel. Fallon v. Accudyne Corp.*, the United States intervened with respect to count one of the complaint but not count two. *See United States ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir.1996). Defendants challenged relator's status as an original source with respect to count two, but the court ruled in favor of the relator and found jurisdiction. *See id.* at 940–41. Then the parties agreed to a lump sum settlement of all claims, from which the relator received a percentage plus reasonable fees. *See id.* at 938. Defendants sought to challenge the requested fee award, in part, by arguing that the court lacked subject matter jurisdiction over count two. *See id.* at 938, 940. The Seventh Circuit rejected this argument finding that the issue of subject matter jurisdiction had been litigated in the district court, defendants did not challenge the adverse decision prior to settlement, and thus, they could not collaterally attack it. *See id.* at 941.

The Seventh Circuit's decision, that subject matter jurisdiction was not open to attack on appeal, precluded that claim from further consideration, and therefore, the rest of the jurisdictional commentary that Eitel relies on from *Accudyne,* as discussed below, is dicta. Additionally, Eitel fails to recognize that application of the Seventh Circuit's interpretation of § 3730(e)(4)(A) would preclude him from participating in this suit. The court states in broad terms that, "[a]fter Congress gave supplemental jurisdiction a statutory basis in 28 U.S.C. § 1367, it is unclear what it means to assert that a court lacks jurisdiction over one count of a complaint." *Accudyne*, 97 F.3d at 940. Eitel quotes this as authority for the argument that if the court has jurisdiction over the government's claims in intervention, then it must have jurisdiction over the whole action as originally brought by him. However, after the court makes its broad introductory statement quoted above, it acknowledges the jurisdictional exception embodied in § 3730(e)(4)(A), but does not address it because the issue of subject matter jurisdiction was foreclosed from collateral attack. *Id.* at 940–41. The court goes on to offer an opinion that § 3730(e)(4)(A) operates not as a true jurisdictional bar, which would "curtail the categories of disputes that may be resolved (a real 'jurisdictional' limit) but instead determines who may speak for the United States on a subject, and who if anyone gets a financial reward." *Id.* at 941. Under this interpretation, Eitel would be dismissed because "once information becomes public, only the Attorney General and a relator who is an 'original source' of the information may represent the United States." *Id.*

■ The Seventh Circuit's dicta in *Accudyne* does not alter this Court's reliance on *Federal Recovery Services*. *Accudyne* does not address the same issue, the procedural posture of the case was different, and most significantly, the court's interpretation of § 3730(e)(4)(A) would preclude Eitel from representing the United States as a relator. Allowing Eitel to remain in the suit and receive a financial benefit solely because the United States took over the prosecution thwarts the purpose of the original source provision. Although there is minimal law on this subject, Eitel is unable to point to any authority which affirmatively supports his position. Both the Fifth Circuit and the Seventh Circuit recognize that

§ 3730(e)(4)(A) restricts an improper relator from representing the United States in a False Claims Act case and from receiving any financial benefit from such a case. Looking solely to § 3730(e)(4)(A) and the case law interpreting it, this Court agrees with both the Fifth and the Seventh Circuit that the original source requirement retains its relevance even if the United States intervenes.

A final conclusion, however, requires additional analysis. Eitel argues that another statutory provision confirms his interpretation that the original source requirement of § 3730(e)(4)(A) does not apply when the United States' intervenes. The FCA statutory section providing for the award to *qui tam* plaintiff states, in part:

> If the Government proceeds with an action . . . Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.

31 U.S.C. § 3730(d)(1). This specific provision applies only to actions that are *primarily* based on disclosures of information, and in which the government intervenes.

---

4. Eitel does not specifically identify the concern at issue, but presumably it is the goal of preventing a relator who relied on public information from receiving too substantial of a benefit from the case.

5. The Court notes that Eitel previously advocated an interpretation of § 3730(d)(1) that allowed even the smallest sum, zero to ten percent, to be awarded only to an *original source,* when the case was based on public disclosures. In his June 30, 1995 Memorandum in Opposition to Defendant's Motions to Dismiss, Eitel argued for a broad interpretation of the original source requirement, one that required only that the relator bring *"some* original information to the suit."

Eitel argues, in his December 1997 Memorandum, that by capping the award at ten percent and allowing a court to reduce the award all the way to zero percent for these types of cases, this provision addresses the same concern as the original source requirement.[4] Therefore, this provision would be superfluous if the original source requirement also applied to publicly disclosed actions in which the government intervenes. He further argues that if Congress did not intend this provision to supplant the original source requirement then it would have also been included in the section on awards to *qui tam* plaintiffs when the government declines to intervene.

The Court disagrees with Eitel's analysis of the relationship between (e)(4)(A) and (d)(1). The language and purpose of § 3730(e)(4)(A) indicates that, regardless of the United States intervention, the Court does not have jurisdiction over a relator's claims if based on public disclosures unless he is an original source.[5] The Fifth Circuit addressed this issue and found that the public disclosure provision of (d)(1) was included for "the case where the information has already been disclosed and the person qualifies as an 'original source' but where the essential elements of the case were provided to the government or news media by someone other than the qui tam plaintiff." *Federal Recovery Services,* 72 F.3d at 452 (quoting 132 Cong.Rec. H9389). This Court agrees and finds that the FCA sliding award scale is most logical when all relators who bring cases based on public disclosures must be an original source, regardless of United States' intervention.[6] Congress provided the largest

---

(6/30/95 Mem. Opp'n Defs.' Mot. Dismiss, at 18.) To support this argument he quoted legislative history on the sliding award scale in (d)(1), stating that the ten percent cap applied to " 'original sources' who bring cases based on information already publicly disclosed where only an insignificant amount of that information stemmed from that original source." (6/30/95 Mem. Opp'n Defs.' Mot. Dismiss, at 18 (quoting 132 Cong. Rec. 28, 580).)

6. It is incongruous that under Eitel's analysis a relator who is not an original source could receive an award if the government prosecutes the action, but could not receive an award for shouldering the entire burden of prosecution.

award of twenty-five to thirty percent if the United States does not intervene, regardless of how much of the suit may have been based on previously disclosed information. If the United States does intervene, a relator may receive fifteen to twenty-five percent, even if the case was "based upon" public disclosures, unless it was based *primarily* on public disclosures, in which case the award is capped at ten percent. Under this Court's interpretation, if the relator carries the full burden of prosecuting the case and achieves success in a case that otherwise would not have been brought, he receives the greatest award regardless of the quantity of previous disclosure because any recovery to the government is one hundred percent net gain. If the United States proceeds with the action then the award to the relator is less because the government's effort and expense is greater and the relator's contribution is less, and when a case is based *primarily* on publicly disclosed information the relator's contribution is even less significant, and the available award reflects that. This explication gives a straightforward meaning to all of the statutory language without rewarding parasitic filers.

Based on all of the above, the Court finds that § 3730(d)(1) does not supplant the original source requirement of § 3730(e)(4)(A), and that the jurisdictional requirements of § 3730(e)(4)(A) are not moot upon the United States' intervention. Eitel was found not to be a proper relator, and the intervention of the United States did not cure the statutory jurisdictional bar precluding his claims. Therefore, the Court cannot entertain his claims under the False Claims Act and he cannot be a party to this case. The Court will deny Eitel's Motions for Summary Judgment against the United States and the Defendants, will grant the United States' and the Defendants' Cross-motions for Summary Judgment, and will deny as moot all other pending motions pertaining to or filed by Eitel.

## MOTION FOR RECONSIDERATION OF JUDGE JONES' RULING

Eitel has requested in a variety of pleadings that, if this Court finds there is not jurisdiction under the law of the case as it stands, this Court should reconsider Judge Jones' August 16, 1995 ruling. He has never filed a formal motion for reconsideration, but the Court will deem his requests as a motion for reconsideration of Judge Jones' August 16, 1995 ruling.

The relevant standard for reconsideration comes from Rule 60(b), which "provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief." *School Dist. No. 1J Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir.1991)).

In his December 1997 Memorandum, Eitel argues that the ruling should be reconsidered solely because Judge Jones overlooked a determinative piece of evidence, Thomas Miller's affidavit. In subsequent filings, Eitel adds new evidence arguments—the same ones that he submits as a basis for not applying the law of the case doctrine. The applicable bases for reconsideration under Rule 60(b) are newly discovered evidence or extraordinary circumstances. The Court's analysis of this issue is substantially the same as that undertaken in determining the law of the case above. The Court finds there is neither newly discovered evidence nor extraordinary circumstances warranting reconsideration of the August 16, 1995 ruling. Thus, the Court will deny Eitel's motion for reconsideration of that order and judgment.

## RULE 54(B) PARTIAL JUDGMENT

Eitel has expressed great concern about his right to appeal the rulings in this case. First, he has expressed concerns that he may be foreclosed from appealing the merits of Judge Jones' August 1995 decision. Second, in an October 9, 1998 motion, he requested a declaratory judgment about his status in the case, the issue currently before the Court, so that he could seek an immediate appeal of any unfavorable judgment. However, the Court postponed briefing on his motion for declaratory judgment until after this ruling. Because supplemental briefing on the issue of his status was underway and oral argument was set, re-briefing the issue in a new format would have slowed down the resolu-

tion of the issue. Due to the numerous references to his appeal rights and his desire to immediately appeal this decision should it be unfavorable to his interests, the Court will consider his filings as a request for a Rule 54(b) final judgment.

Rule 54(b) allows for the entry of a final judgment with respect to less than all the claims presented in an action, "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R.Civ.P. 54(b). The Ninth Circuit states that the appropriate focus for a court's Rule 54(b) decision is, "severability and efficient judicial administration." *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir.1987). The Ninth Circuit found a Rule 54(b) final judgment proper when the claims were legally and factually distinct, and it served the interests of fairness and justice. *See Cadillac Fairview/California, Inc. v. United States*, 41 F.3d 562, 564 n. 1 (9th Cir.1994).

 With respect to Eitel the action thus far has focused solely on whether he is an original source and whether the Court has jurisdiction over his claims. These issues are factually and legally distinct from the merits of the case, and the issues which will now proceed before this Court. Additionally, the United States has chosen not to proceed against all claims and all parties that Eitel originally pursued. For those parties the case is at an end, and as the merit of the claims was never reached, the possible issues for appeal are distinct from anything that will continue forward in this Court. Eitel filed this action in 1994 and has diligently pursued it, yet four years and one appeal later, this case is just reaching a resolution with respect to his involvement. The Court finds it serves the interests of fairness and justice to enter a final judgment with respect to Eitel's status before the Court and the claims that the United States has chosen not to prosecute. Thus, the Court finds that there is no just reason for delay of a partial judgment with respect to Plaintiff Eitel and Defendants Tomassoni, Grantham, Powers,

Venable, Moore and Newton, and will so order that judgment be entered.

For the sake of clarity, the Court will order that the August 16, 1995 judgment, not dismissal order, be vacated. The Court will then enter a Rule 54(b) final judgment with respect to Eitel and those Defendants against which the United States has not intervened.

## MOTION FOR RULE 11 SANCTIONS

Eitel filed an August 19, 1998 Motion for Rule 11 Sanctions Directed to Defendant DOJ and Government Attorneys Elizabeth Hack and Carolyn Mark. In compliance with Rule 11(c)(1)(A), Eitel served letter notices of the alleged violations on the government dated February 6 and May 13, 1998.[7] Rule 11 allows a court to impose sanctions when a party violates the requirements of the rule. *See* Fed.R.Civ.P. 11(c). Rule 11 provides, generally, that by presenting a paper to the court an attorney is certifying that to the best of their reasonably based knowledge it is not presented for an improper purpose, the legal contentions are warranted and the factual contentions are supportable. *See* Fed. R.Civ.P. 11(b).

Eitel sets forth multiple allegations in his motion, not all of which directly parallel the February and May notices served on the government. For the sake of clarity and compliance with Rule 11(c)(1)(A), the Court will list the issues raised in the two notices and will address only those allegations. The allegations, as summarized, allege: (1) improper and contradicted filings stating that Eitel is not an original source; (2) improper request for stay of discovery; (3) improper ex parte request for time extension to respond to Eitel's motion for summary judgment; (4) unsupported facts and law *will* be argued in the response to Eitel's December 1997 Motion for Summary Judgment; (5) filing an amended complaint without court authority; and (6) misinforming the Court that certain aircrafts and parts sold to Defendants were not part of his original complaint, and not acknowledging in their January 1998 complaint that an unjust enrichment

---

**7.** The government disputes whether Eitel complied with the notice requirements of Rule 11(c)(1)(A). Although the exact motion was not served on the government, the Court finds that the letters provided sufficient notice with respect to the allegations contained therein.

claim was included in Eitel's original complaint.

*Individual Allegations*

(1) Eitel alleges that it was improper for the government to contend that he is not a proper relator. However, the district court had determined that to be true, and that decision is reinforced in the instant order. Therefore, it can not have been improper for the government to advance that as part of their theory of the case.

(2) Eitel states that at the time the government requested a stay of discovery in December 1997, discovery had been ongoing, that a discovery conference had been negotiated in July 1997, and that the government had waived any objections to Rule 26(f). He argues that the government violated Rule 11 by failing to reveal this information in its motion. On December 24, 1997, Eitel filed a response to the government's request for a stay on discovery, which indicated that discovery had commenced, that the District of Oregon does not require a Rule 26(f) meeting, and that a Rule 26(f) meeting was unnecessary and inappropriate and had been requested by the government as a delay tactic. The response does not indicate that there had been a discovery conference or that the government had waived any objections under Rule 26(f), which are two of the issues Eitel contends the government had an obligation to disclose to the Court. Additionally, in the government's February 19, 1998 letter to Eitel in response to his February notice, the government states that a discovery conference was never held and that the discovery attempted and discussed in July was for a related case regarding proceeds from this action, which has been dismissed. Eitel believes it was improper to seek a stay of discovery on the issues solely between he and the government. However, the Court did not intend the two issues to proceed separately, as evidenced by the Court dismissing the independent suit but allowing Eitel to include the claims within this case.

Rule 26 states, in part, that "except when authorized under these rules or by local rule, order, or agreement of the parties, a party may not seek discovery from any source before the parties have met and conferred as required by subdivision (f)." Fed.R.Civ.P. 26(d). Even if the government had participated in some discovery, such as the depositions that it acknowledged in its motion for a stay, it is not material because a party may object to any seeking of discovery prior to a Rule 26(f) meeting. Eitel disagrees with the government's position, but he had an opportunity to express that in his response to the motion. Having thoroughly reviewed the briefing on both the Rule 11 violations and the motion to stay discovery, there is, at best, minimal evidentiary support for Eitel's allegations. The weakly supported allegations are insufficient for a finding that Rule 11 was violated by the United States' failure to address in its motion the issues now raised by Eitel. The Court finds that sanctions on this issue are not warranted.

(3) The time extension at issue was not requested ex parte. The government served the motion on Eitel, however, the Court chose to grant the motion without waiting for a response. This was not a form of manipulation or deception on the part of the government, but a discretionary choice by the Court.[8] Eitel alleges that the basis for requesting the extension was improper and concealed from the Court. However, as Eitel does not indicate what the allegedly improper basis was, the Court is unable to make a determination about that allegation. In his motion for sanctions, Eitel does not address the government's method of obtaining the time extension, the issue about which he served notice. Rather, he contends that the government did not file by its deadline. The government lodged and served its filing by the deadline, but it was not immediately filed because it simultaneously filed a motion to exceed the page limit. This claim was not noticed pursuant to Rule 11, and further, is not within the purview of Rule 11 and does not warrant further consideration.

(4) Eitel gave notice that he objected to items the government was going to include in its response to his December 1997 motion for summary judgment. The response had not been filed, and therefore could not constitute

---

8. The same exercise of discretion was employed to grant Eitel's December 12, 1997 request to exceed the page limit on his memorandum without waiting for a response from the government.

a violation of Rule 11. The only specific point which Eitel pursues in his August motion with respect to this filing is that the government has identified a different original source in an attempt to discredit him. The government argues that it has not identified a different original source, but only attempted to support its argument that Eitel is not an original source. As the Court noted under item one, that argument has merit and the government had the right to assert facts in support of it.

■ (5) Eitel contends that the United States filing of an amended complaint violated Rule 11 because it might supersede his complaint, the government did not file a Rule 15 motion to amend, and the Court did not authorize an amended complaint. The government responds that it did not intend anything misleading by labeling its filing, which the Court had ordered to be submitted, as an amended complaint, and has no objection to it being labeled "Complaint of the United States" instead. In conjunction with its complaint, the government filed a January 30, 1998 notice informing the Court that a proper relator is statutorily allowed to maintain any claims with respect to which the government does not intervene. The Court finds that the government did not mislead the Court or other parties about the nature of its complaint or its impact on Eitel's claims that the United States chose not to pursue. There is no basis to conclude that the complaint was filed or titled for an improper purpose in violation of Rule 11.

(6) Eitel argues that the government attempted to mislead the Court about whether aircraft in the hands of Defendants Aero Union and TBM were included in his original complaint, in order to preclude him from a portion of the monetary recovery. However, the government points to its February 13, 1998 Memorandum, which admits that those aircraft are mentioned in the complaint. The government goes on to argue that those aircraft were not properly part of a False Claims Act complaint but a common law complaint, and therefore any recovery from them was not an "alternate remedy" from which a relator could receive an award. The government does not focus on whether those planes were in the complaint, but whether any recovery was obtained pursuant to the False

Claims Act. Although Eitel disagrees with this characterization, and indicated so in his filings, the government presented a reasonable well-supported argument that did not violate Rule 11.

It is not clear what Eitel is contending about unjust enrichment. To the extent he is referring to the alternate remedy issue above, the government put forth a substantiated argument on that issue. To the extent that he is arguing that the United States did not include an unjust enrichment claim in the complaint it filed in January 1998, there are no grounds on which he can dispute the claims the government chose to include in its complaint.

*Conclusion*

The Court has reviewed Eitel's allegations as thoroughly as possible, and finds that none of his allegations warrant further investigation or sanctions under Rule 11. Unfortunately, the procedural posture of this case has placed Eitel's interests in opposition to those of the United States on certain matters. Eitel has so fervently pursued this case and has so vehemently sought to protect his rights, that no one else's actions sufficiently meet those goals. However, not meeting his standards in those areas does not equate to a violation of the Federal Rules. Based on all of the above, the Court will deny Eitel's Motion for Rule 11 sanctions.

### III. Conclusion

The case was remanded from the Ninth Circuit with Judge Jones' dismissal of Eitel for lack of subject matter jurisdiction intact. As no exceptions to the general doctrine of the law of the case are applicable to the facts of this case, the Court finds that Judge Jones' dismissal of Eitel remains the law of the case. The United States' intervention does not cure the underlying jurisdictional defects in Eitel's claims. Eitel is not an original source and is therefore not a proper relator, thus, he cannot represent the United States' interests and should not receive a share of any proceeds. Thus, the Court will deny Eitel's motion for summary judgment on the supplemental complaint and his partial motion for summary judgment, and grant the United States' and Defendant TBM's cross-

motions for summary judgment. The Court finds no basis upon which to reconsider Judge Jones' ruling. The Court will enter a Rule 54(b) partial judgment with respect to Eitel and Defendants Tomassoni, Grantham, Powers, Venable, Moore and Newton. Finally, the Court will deny Eitel's request for Rule 11 sanctions against the Department of Justice Attorneys.

Accordingly, IT IS **ORDERED** that:

(1) Eitel's December 15, 1997 Motion for Summary Judgment on Supplemental Complaint [Doc. 228] and Eitel's April 8, 1998 Motion for Partial Summary Judgment [Doc. 313] are **DENIED;**

(2) the United States' February 19, 1998 Cross Motion for Summary Judgment [Doc. 253] and TBM's May 8, 1998 Cross–Motion for Summary Judgment [Doc. 339] are **GRANTED;**

(3) Eitel's requests for reconsideration are **CONSTRUED** as a Motion for Reconsideration Pursuant to Rule 60(b) and **DENIED;**

(4) Plaintiff Eitel is **DISMISSED WITH PREJUDICE;**

(5) Defendants Tomassoni, Grantham, Powers, Venable, Moore and Newton are **DISMISSED WITH PREJUDICE;**

(6) the August 16, 1995 Judgment [Doc. 177] is **VACATED;**

(7) the Clerk of the Court is directed to enter a Rule 54(b) Final Judgment, with respect to the dismissal of Eitel, Tomassoni, Grantham, Powers, Venable, Moore and Newton;

(8) Eitel's August 19, 1998 Motion for Rule 11 Sanctions [Doc. 370] is **DENIED;** and

(9) all other pending motions pertaining to or filed by Eitel are **DENIED AS MOOT** [Docs. 267, 334, 341, 358, 366, 369, 371, 381, 384, 386, and 395].

### JUDGMENT IN A CIVIL CASE

**DECISION BY COURT.** This action came under consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay, therefore, this case is Dismissed with Prejudice as to Plaintiff Eitel and Defendants Tomassoni, Grantham, Powers, Venable, Moore and Newton.