UNITED STATES of America
ex rel. Fred M. BURNS

v.

A.D. ROE COMPANY, INC.; Jim McCubbins, III; Norman Leigh; Kerry Wilcher; Carl Graf; Steven R. Stambaugh; Rodger Call; Plano Construction Company; Swift Roofing of Elizabethtown, Inc.; Wallender Painting; A & A Mechanical, Inc., and Romac, Inc.

Civil Action No. C94–357L.

United States District Court,
W.D. Kentucky,
Louisville Division.

March 19, 1996.

William F. Campbell, Assistant U.S. Attorney, Louisville, Kentucky, Peter F. Burns, Gary W. Fillingim, Mobile, Alabama, Michael E. Coen, Bardstown, Kentucky, for Fred M. Burns, Relator.

George P. Parker, Thomas E. Roma, Jr., G. Bruce Stigger, Parker & O'Connell, Louisville, Kentucky, for A.D. Roe Company, Inc., James E. McCubbin, III, Norman Leigh, Kerry Wilcher, Carl Graf, Steven R. Stambaugh, Rodger Call, and Romac, Inc.

Michael T. Connelly, Connelly, Kaercher & Stamper, Louisville, Kentucky, for Plano Construction Company.

Max Parker, Murray, Kentucky, for Swift Roofing of E–Town, Inc.

I. Joel Frockt, Michael J. Levy, Louisville, Kentucky, for Wallender Painting.

Robert L. Ackerson, David B. Blandford, H. Edwin Bornstein, Ackerson, Yann & Miller, P.S.C., Louisville, Kentucky, for A & A Mechanical, Inc.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on Defendants' motion for summary judgment and to dismiss. In addition, the Relator, Fred M. Burns, and the United States of America have moved to dismiss the counterclaim of A.D. Roe, McCubbins, Leigh, Wilcher, Graf, Stambaugh, Call and Romac.

Burns filed this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") on June 3, 1994. On March 15, 1995, the United States of America (the "Government") intervened in the action. Burns alleges that Defendants submitted false claims for payment to the United States Department of the Navy ("Navy") in connection with their performance under a contract between A.D. Roe, Inc. and the Navy. Under the contract, Roe served as the prime contractor for the modernization of the Phalanx facility at the United States Naval Ordnance Station. Defendants Jim McCubbins, III, Norman Leigh, Kerry Wilcher, Carl Graf, Steven R. Stambaugh, and Rodger Call were employed by and/or served as officers of Roe. Defendants Plano Construction Company, Swift Roofing of Elizabethtown, Inc., Koch Corporation, Wallender Painting, A & A Mechanical, Inc. and Romac, Inc. were subcontractors of Roe. Burns acted as the Navy's Construction Representative on the Phalanx project except for a time period from November 1993 to February 1994.[1] During that period, Burns continued his employment with the government, but not on the Phalanx project. He returned to the Phalanx project in February 1994.

In response to Burns' complaint, Defendants Roe, McCubbins, Leigh, Wilcher, Graf, Stambaugh, Call, and Romac filed a counterclaim against Burns and the Government. The counterclaim against Burns relates to his duties as a construction representative for the Navy on the project. The counterclaim seeks money damages from Burns because he allegedly negligently or intentionally failed to perform his duties as the Navy's construction representative in an effort to profit in this *qui tam* action. Further, Defendants allege that Burns fraudulently aided and abetted the commitment of the acts referenced in the Amended Complaint.

## I.

Defendants have moved to dismiss and for summary judgment based on the lack of subject matter jurisdiction. Section 3730(e)(4)(A) of the False Claims Act states that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

An "original source" is defined in § 3730(e)(4)(B) as:

---

1. The time period from November 1993 to February 1994 is significant because Burns claims he acquired the information that forms the basis for his complaint through Freedom of Information Act requests during this period. In short, Burns claims he uncovered Defendants' fraud on his own time when he was not working on the Phalanx project. By claiming that he uncovered the fraud on his own time and through his own initiative, Burns is attempting to satisfy the jurisdictional requirement that he be an "original source" of the information. As we will see in the discussion regarding the "original source" issue *infra*, it is very difficult for a government employee such as Burns to qualify as an original source where the relator uncovers the fraud during the course of his employment.

An individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

Thus, if the information is publicly disclosed, then the relator must be an original source of the information, or the court will lack subject matter jurisdiction. Section 3730(e)(4) is intended to bar parasitic lawsuits based on publicly disclosed information and to prevent payment to would-be relators who have contributed nothing to the exposure of the fraud.

Under the statute's plain language, the Court must first decide if the allegations that form the basis of the false claim suit were publicly disclosed before requiring a relator to be an "original source." Thus, the threshold issue is whether this *qui tam* suit was based upon a public disclosure. Burns claims that he discovered the information for his allegations from the Freedom of Information Act ("FOIA") documents he received when he was suspended from the A.D. Roe project from November 1993 to February 1994.

■ Few courts have addressed the issue of whether documents acquired under FOIA are publicly disclosed within the meaning of the False Claims Act.[2]

A recent Ninth Circuit opinion contains the most significant discussion of this issue. In *U.S. ex rel Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512 (9th Cir.1995), the relator filed suit *before* he obtained documents through FOIA. The court found that information cannot be deemed publicly disclosed until a member of the public actually makes a FOIA request and receives information from the government. Only then is the information actually, rather than theoretically, available to the public. *Schumer*, 63 F.3d at 1520. Because the documents were not actually available prior to the relator's suit, the court found that they were not publicly disclosed.[3] *Id.*

The Ninth Circuit reached a good result because it gave a practical, common sense interpretation to the term "public disclosure." The court made a sensible distinction between "theoretical" and "actual" availability of information. Certainly, information that is hidden in files should not be considered public. Moreover, a definitive assessment of whether government information is exempt from disclosure under a FOIA exception does not occur until *after* a member of the public makes a FOIA request. For example, Defense Department regulations require that once a FOIA request has been made, there must be an examination of the materials sought to determine if any information requires continued protection. Because the final assessment of whether the information sought could be exempt from FOIA does occur until after a formal FOIA request has been made, the information cannot be deemed to be publicly disclosed prior to such a request. *Schumer*, 63 F.3d at 1520.

Here, the relator has based his claim on documents he received through FOIA before he filed suit. Believing the Ninth Circuit's logic persuasive and applicable here, the Court finds that the allegations forming the basis of this *qui tam* action were publicly disclosed.

## II.

■ Because there was a public disclosure, this Court will lack subject matter jur-

---

**2.** Two district courts have considered this issue and come to opposite conclusions. Unfortunately, neither court provided much discussion or rationale for its holding. The Court in *U.S. ex rel Eitel v. Reagan*, 898 F.Supp. 734 (D.Oregon 1995) found that plaintiff's information came from a public source because he obtained some of his documents through a FOIA request. But in an unreported opinion, *U.S. ex rel Pentagen Technologies Int'l Ltd. v. CACI Int'l Inc.*, 1995 WL 693236 (S.D.N.Y. Nov. 22, 1995), the Court held that documents acquired under FOIA are not publicly disclosed. The court reasoned that subject matter jurisdiction should not be compro-

mised because the relator relied on documents not yet in the public domain but which *could* be pulled into the public domain as the result of access mechanisms such as FOIA. *Id.* at *9.

**3.** In support of its position in *Schumer*, the Ninth Circuit cited *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117, 100 S.Ct. 2051, 2060–61, 64 L.Ed.2d 766 (1980). In that case, the Supreme Court stated that the disclosure of information in response to a FOIA request is a public disclosure within the meaning of the Consumer Product Safety Act.

isdiction unless the relator is an original source of the information. The issue now is whether a government employee, whose job required him to report fraud to his supervisors, can qualify as an original source, and the answer is no.

■ The paradigm *qui tam* case is one in which an insider at a company brings an action against his own employer. *United States ex rel. Fine v. Chevron USA, Inc.*, 72 F.3d 740, 742 (9th Cir.1995) (*en banc*). The False Claims Act is meant to encourage insiders privy to a fraud to blow the whistle on the crime. *Id.* This case, in which a government employee blows the whistle on a company, defies the paradigm. The fact that this case involves a factual scenario Congress may never have envisioned lends support to the Court's conclusion that Burns must be dismissed.

The False Claims Act provides that a relator seeking to prove he is an original source must show both that he has "direct and independent knowledge of the information on which the allegations are based," and that he "has voluntarily provided the information to the Government before filing an action." 31 U.S.C. 3730(e)(4)(B). The Sixth Circuit has not addressed the "original source" issue. However, the First and Ninth Circuits have recently issued persuasive considerations of it.

The First Circuit addressed whether an auditor for the office of the Inspector General can have "direct and independent knowledge." *U.S. ex rel LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir.1990). The relator in *LeBlanc* was obligated, as part of his job, to investigate and report fraud. The *LeBlanc* court reasoned that the fruits of the auditor's effort belong to his employer, so he could not have independent knowledge of the information.

The Ninth Circuit addressed the other part of the original source test, *i.e.*, whether an employee such as Burns provided the information to the government voluntarily, in *U.S. ex rel Fine v. Chevron USA, Inc.*, 72 F.3d 740 (9th Cir.1995). As in *LeBlanc*, the relator in *Fine* was an auditor for the office of the Inspector General. The court concluded that the relator's actions were not voluntary because they were compelled by the nature of his employment. The relator in *Fine* was no volunteer because

> [H]e was a salaried government employee, compelled to disclose fraud by the very terms of his employment. He no more voluntarily provided information to the government than we, as federal judges, voluntarily hear arguments and draft dispositions.

*Fine*, 72 F.3d at 743–44.

The *en banc* majority, concurring and dissenting opinions lay out the most persuasive conceptual arguments for each side of the issue. The Court finds the majority opinion more realistic and more consistent with the statute.

Like the relators in *LeBlanc* and *Fine*, Burns was obligated, under the terms of his employment, to report fraud to the Government. Burns did not have direct and independent knowledge of the information that forms the basis for this *qui tam* suit. The fruits of Burns' effort belong to the government, not to Burns, so, by definition, Burns could not have independent knowledge of the information. Nor did Burns provide the information voluntarily to the government. Rather, Burns' actions were compelled by the nature of his employment. Accordingly, the Court concludes that Burns is not an original source of the information on which the allegations are based, and this Court lacks subject matter jurisdiction over his complaint.

### III.

■ Although the Court lacks jurisdiction over the relator's claim, the United States alleges that it can still pursue its fraud claims against Defendants in *this* action. The issue is whether the Court must dismiss the United States simply because the Court has dismissed the Relator. Neither side has provided the Court with authority that resolves this issue. The United States relies on very old cases interpreting an obsolete version of the False Claims Act, rather than Section 3730(e)(4). Defendants base their argument that the United States should be dismissed on an unnecessarily stilted reading of the

statute. Section 3730(e)(4)(A & B) states that this Court will not have jurisdiction over an action if there has been a public disclosure, "unless the action is brought by the Attorney General." Here, Defendants argue, the United States did not *bring* this action—the United States *intervened,* and therefore the Court lacks jurisdiction over the claim of the United States.

The purpose of the False Claims Act is to help the Government recover when it has been defrauded. The statute is not intended to make the United States' claim dependent on the Relator's claim in any way. The Relator exists to serve and protect the government, not vice versa. Nothing in the case law or the legislative history compels this Court to dismiss the United States simply because the Relator is unable to proceed. With the relator dismissed, the Court views the action as being now "brought" by the Attorney General, unless she abandons it. Even Defendants concede that the United States could bring its own False Claims suit against Defendants. It seems silly, then, to go through the charade of dismissing the United States in this action and force the government to file another complaint when the plain language of the statute does not require it. If this Court would have jurisdiction over the claim of the government in a subsequent action, this Court has jurisdiction over the government's claim in the present action. Other courts have allowed the government to proceed after dismissing the relator on jurisdictional grounds, and this seems to be the most sensible and efficient way to proceed. *See, e.g. Federal Recovery Services, Inc. v. U.S.,* 72 F.3d 447 (5th Cir.1995). Accordingly, the Court will not dismiss the United States.

## IV.

Defendants' amended counterclaim seeks monetary damages from Burns and the United States because Burns allegedly was negligent and careless in performing his duties as the construction representative on the Phalanx project. Because the Court lacks subject matter jurisdiction over Burns' claim, Burns' motion to dismiss the amended counterclaim is moot.