260 F.3d 1054 (9th Cir. 2001)
 SEA COAST FOODS, INC.,A WASHINGTON CORPORATION; MOE CHERAMIE, AKA ELMAR J. CHERAMIE; CORRINA SPATH, JOSEPH A. GALANDO AND STANLEY CAREY, PLAINTIFFS-APPELLEES,
v.
LU-MAR LOBSTER AND SHRIMP, INC.; JEFFREY SEDACCA, AN INDIVIDUAL; TODD RINCON, DEFENDANTS-APPELLANTS.
 No. 99-36156
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Submitted July 12, 2001*
Filed August 10, 2001
Corrected September 25, 2001
 
 [Copyrighted Material Omitted]
 Counsel Anthony J. W. Gewald, Lasher Holzapfel Sperry & Ebberson P.L.L.C., Seattle, Washington, for the appellants.
 Robert A. Medved, Law Offices of Robert A. Medved, Bellevue, Washington; Richard L. Phillips, Mikkelborg Broz Wells & Fryer, Seattle, Washington, for appellees Sea Coast Foods, Inc., Joseph A. Galando and Stanley Carey.
 Michael E. Geltner, Geltner & Associates, Washington, D.C., for appellees Moe Chermaine and Corrina Spath.
 Appeal from the United States District Court for the Western District of Washington John C. Coughenour, District Judge, Presiding D.C. No. CV-98-00002-JCC
 Before: Arthur L. Alarcon, Ferdinand F. Fernandez, and A. Wallace Tashima, Circuit Judges.
 
 Opinion by Judge Fernandez
 
 1
 Lu-Mar Lobster and Shrimp, Inc., Jeffrey Sedacca and Todd Rincon[1] appeal the district court's refusal to award attorneys' fees and more than minimal costs after Lu-Mar accepted an offer of judgment from Sea Coast Foods, Inc., and others. See Fed. R. Civ. P. 68. We affirm in part and vacate and remand in part.
 
 BACKGROUND
 
 2
 Sea Coast and Lu-Mar had a joint venture for the sale of shrimp on the wholesale market. Lu-Mar was to sell shrimp, at cost, to Sea Coast which would then market and re-sell the shrimp. The parties agreed to split the profits from the re-sales equally. Pursuant to the terms of the venture, from June, 1995 through December, 1997, approximately $28,000,000 worth of shrimp was sold to Sea Coast by Lu-Mar. However, in November 1997, Sea Coast claimed that it had discovered that Lu-Mar had been invoicing the shrimp at a price above Lu-Mar's actual costs. Sea Coast estimated that it had overpaid Lu-Mar by approximately $600,000 over the course of the joint venture. At that point, Sea Coast demanded an accounting from Lu-Mar. When Lu-Mar did not respond, Sea Coast filed a complaint in the underlying action in the United States District Court for the Western District of Washington on January 2, 1998, claiming fraud, breach of fiduciary duties, breach of contract, breach of the covenant of good faith and fair dealing, accounting, unfair and deceptive trade practices under Washington law, violation of the Lanham Act, and interference with business relationships and economic expectancies. A former Lu-Mar employee, Moe Cheramie, also filed suit in the United States District Court for the Eastern District of Virginia demanding an accounting from Lu-Mar. That action was transferred to the Western District of Washington and consolidated with Sea Coast's.
 
 
 3
 Lu Mar's response to Sea Coast's complaint was the filing of two suits of its own, one against Moe Cheramie and Corrina Spath, who was also a former Lu-Mar employee, and one against Sea Coast and two of its officers, in the Circuit Court in and for Sarasota County, Florida. The former was removed to the United States District Court for the Middle District of Florida and eventually transferred to and consolidated with Sea Coast's claims in the Western District of Washington. The latter was stayed by the Florida state court pending resolution of this case.
 
 
 4
 On May 1, 1998, Lu-Mar filed its answer, counter-claims and third party claims against Sea Coast, its chief executive officer, Joseph A. Galando, and its Executive Vice President, Stanley J. Carey, in the Western District of Washington. Therein, Lu-Mar alleged conversion, civil theft under Florida law, open account, account stated, fraud, deceit, conspiracy, accounting, breach of fiduciary duties, tortious interference with business and business relationships, misappropriation of trade secrets, breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.
 
 
 5
 Lu-Mar alleged that before Sea Coast supposedly discovered that Lu-Mar was padding the shrimp invoices and also before Sea Coast demanded an accounting, Sea Coast recruited Cheramie and Spath, Lu-Mar employees, to conduct a covert investigation into Lu-Mar's accounting practices. Lu-Mar argued that the accounting information uncovered by that investigation was inadmissible due to the illegitimate manner in which it was obtained. Lu-Mar further contended that Sea Coast conspired with Cheramie and Spath to steal proprietary information and shrimp inventory. The stolen shrimp inventory, said Lu-Mar, was worth $541,254.82. It also stated that Sea Coast was in arrears of $155,601.81 for unpaid invoices. Therefore, Lu-Mar contended that Sea Coast owed it a total of $696.856.63 plus interest. Lu-Mar also claimed that after Cheramie and Spath left its employ, they conspired with Sea Coast and its two officers to circumvent the joint venture by using Lu-Mar's vendors and processors to sell shrimp directly to Sea Coast. Overall, Lu-Mar sought more than $3,000,000 in damages.
 
 
 6
 With respect to Sea Coast's allegations, Lu-Mar maintained that pursuant to its agreement with Sea Coast, and because shrimp vary in size, quality, and condition, the actual costs of the shrimp invoiced to Sea Coast were averaged. That is, the costs of the shrimp it had sold to Sea Coast pursuant to their agreement were averaged together to compute the"actual cost" charged to Sea Coast. Lu-Mar explained that this averaging was necessary because its shrimp inventory is fungible and therefore is priced much like a commodity according to fluctuations in the shrimp market. Lu-Mar also claimed that this cost averaging practice was the custom in the shrimp industry.
 
 
 7
 After approximately a year and a half of obstreperousness, discovery delays presided over by a court-appointed special master, a continuance, a substitution of counsel, summary judgment motions, other motions, and unsuccessful settlement negotiations involving a mediator, the underlying action concluded when, on July 13, 1999, Lu-Mar accepted Sea Coast's Judgment Offer pursuant to Rule 68 of the Federal Rules of Civil Procedure. The offer stated that Sea Coast and the other defendants agreed to "let judgment be taken against them in the amount of $375,000 net on all claims between them and Lu-Mar Lobster & Shrimp, Inc., Jeffrey Sedacca and Todd Rincon now pending in this action." CR at 336. Therefore, the district court directed entry of judgment in favor of Lu-Mar in the amount of the $375,000.
 
 
 8
 On July 30, 1999, Lu-Mar asserted a right to attorneys' fees under the Florida civil theft law. Lu-Mar also submitted a bill of costs to the district court on August 5, 1999. Sea Coast objected to the cost bill. The clerk taxed costs at $230.00, the filing fees in the case, and denied all other claimed costs. On September 7, 1999, Lu-Mar moved for de novo review of the clerk's costs decision. The district court denied attorneys' fees and upheld the clerk's cost determination. This appeal followed.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 9
 The district court had jurisdiction pursuant to 28 U.S.C. §§§§ 1331-1332, and we have jurisdiction pursuant to 28 U.S.C. §§ 1291.
 
 
 10
 In general, a district court's award or denial of attorneys' fees is reviewed for abuse of discretion. See O'Hara v. Teamsters Union Local # 856, 151 F.3d 1152, 1157 (9th Cir. 1998). However, whether the district court applied the proper legal standard in determining fees is a question of law which we review de novo. See Siegel v. Fed. Home Loan Mortgage Corp., 143 F.3d 525, 528 (9th Cir. 1998). We review the district court's award of costs for abuse of discretion. See LSO, Ltd. v. Stroh, 205 F.3d 1146, 1160 (9th Cir. 2000); EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997).
 
 DISCUSSION
 
 11
 As pertinent here, Federal Rule of Civil Procedure 68 provides that:
 
 
 12
 At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued.
 
 
 13
 It is apparent that the rule does provide for costs to the accepting party, and the parties do not dispute that. Whether it also allows for an award of attorneys' fees is a little more complex. We will discuss the latter issue first.
 
 A. Attorneys' Fees
 
 14
 As we have already stated, Lu-Mar filed a number of claims against Sea Coast. Only one of those allowed for attorneys' fees. That was a claim under Florida law, which in certain cases of theft proved by clear and convincing evidence allows for an award of reasonable attorneys' fees to the complaining party. Fla. Stat. Ann. §§ 772.11. Lu-Mar argues that the acceptance of the offer of judgment necessarily means that it is entitled to those fees. We disagree.
 
 
 15
 As the Seventh Circuit has pointed out, Rule 68's provision for costs does not encompass attorneys' fees where those are not defined as part of the costs by the underlying statute. See Fletcher v. City of Fort Wayne, 162 F.3d 975, 977 (7th Cir. 1998) ("Nothing in Rule 68 supports plaintiffs' position that by accepting a Rule 68 offer they automatically become entitled to attorneys' fees. . . . [The rule has ] [n]ot a peep about prevailing-party status or automatic attorneys' fees."). The Florida statute in question here distinguishes between attorneys' fees and costs, so it follows that Lu-Mar's acceptance of the Rule 68 offer did not automatically entitle it to attorneys' fees.
 
 
 16
 On the other hand, where a Rule 68 offer makes no reference to attorneys' fees whatsoever, they are not automatically precluded. Rather, the matter of fees remains an open question. As we have said:
 
 
 17
 In these circumstances, where the underlying statute does not make attorney fees part of costs, it is incumbent on the defendant making a Rule 68 offer to state clearly that attorney fees are included as part of the total sum for which judgment may be entered if the defendant wishes to avoid exposure to attorney fees in addition to the sum offered plus costs. Nusom v. Comh Woodburn, Inc., 122 F.3d 830, 834 (9th Cir. 1997). Because it was master of the offer, Sea Coast must "bear the brunt of uncertainty." Id.; see also Fletcher, 162 F.3d at 978; Webb v. James, 147 F.3d 617, 623 (7th Cir. 1998).
 
 
 18
 The effect of these two rules is that the district court must separately determine who the prevailing party was and decide upon an attorneys' fees award accordingly. In other words, the mere existence of an accepted offer does not establish a right to those fees. It permits the plaintiff to seek to recover them. See Nusom, 122 F.3d at 835.
 
 
 19
 The fact that a plaintiff has received a judgment pursuant to a Rule 68 offer does not mean that the plaintiff has prevailed in the sense that he is entitled to attorneys' fees. Perhaps he has. See, e.g., Webb, 147 F.3d at 623. Perhaps not. See, e.g., Fletcher, 162 F.3d at 978 (the Rule 68 settlement was for nuisance value only, so plaintiffs were not entitled to fees). We decline to attempt to set forth a laundry list of factors for consideration, but in this case we cannot say that the district court erred when it determined that Lu-Mar did not prevail on its Florida theft claim.
 
 
 20
 We recognize that Lu-Mar did obtain a substantial award as a result of the blanket settlement, but that does not necessitate a finding that it prevailed on each and every one of the twelve claims that it propounded. On the contrary, we agree with the courts that have demanded a more nuanced approach to the prevailing party determination. Thus, when a settlement was obtained during litigation, the Idaho Court of Appeals still found it necessary to consider "(1) the result obtained in relation to the relief sought; (2) whether there were multiple claims or issues; and (3) the extent to which either party prevailed on each issue or claim." Jerry J. Joseph C.L.U. Ins. Assocs., Inc. v. Vaught, 117 Idaho 555, 557, 789 P.2d 1146, 1148 (Idaho Ct. App. 1990). Similarly, in Galan v. Wolfriver Holding Corp., 80 Cal. App.4th 1124, 96 Cal. Rptr. 2d 112 (2000), even though the entity requesting fees had been dismissed in a settlement, "the trial court had discretion to determine whether [it] was the prevailing party`on a practical level.' " Id. at 1129, 96 Cal. Rptr. 2d at 115 (citation omitted); see also Heather Farms Homeowners Ass'n, Inc. v. Robinson, 21 Cal. App. 4th 1568, 1571-75, 26 Cal. Rptr. 2d 758, 759-61 (1994).
 
 
 21
 Here the district court was well positioned to determine whether Lu-Mar had prevailed on its Florida theft claim once the case with Sea Coast had been settled pursuant to a Rule 68 offer. In that respect, the district court was well aware of the nature of this acrimonious litigation and of Lu-Mar's rather extravagant claims against Sea Coast, together with the demand for damages of over $3,000,000. Sea Coast, for its part, averred that Lu-Mar had breached its contractual and fiduciary duties through false cost of goods reports, short weighing, and the like. While the settlement amount, $375,000, was not minuscule by any means, neither was it close to Lu-Mar's demands.
 
 
 22
 The district court, could, as it did, decide that as far as the Florida theft statute claim was concerned:
 
 
 23
 This argument [for fees] has no merit, as even a brief overview of this litigation demonstrates. The dispute began when the plaintiffs refused to pay the defendants for a shipment of shrimp valued at approximately $600,000. The plaintiffs kept the shrimp to offset damages they felt they had suffered as a result of the defendants' conduct in the parties' joint fishing venture. The plaintiffs shortly filed suit to collect these damages, and the defendants counterclaimed for the value of the shrimp and for other damages. The case settled when the defendants accepted the plaintiffs' Rule 68 offer of judgment on the eve of trial. In this offer, the plaintiffs agreed to pay the defendants $375,000 for settlement of all claims between them, substantially less than the value of the "stolen" shrimp.
 
 
 24
 It would require a gross distortion of these facts for the Court to find that the Rule 68 judgment amounts to an admission by the plaintiffs that they are guilty of criminal theft.
 
 
 25
 That was just the kind of wise analysis of the record that Lu-Mar's demand for attorneys' fees required. The district court did not err.
 
 B. Costs
 
 26
 As mentioned already, there can be little doubt that Lu-Mar was entitled to receive some amount by way of costs. See Fed. R. Civ. P. 68; see also Ass'n of Mexican-Am. Educators v. California, 231 F.3d 572, 593 (9th Cir. 2000) (en banc). The only question is how much that might be? The district court limited costs to the filing fee of $230. Lu-Mar wanted $151,734.67. For the most part we see no error in the district court's decision.
 
 
 27
 While Lu-Mar is of the opinion that "costs" means anything it expended, the law is that Lu-Mar can only recover "costs" properly awardable under the relevant substantive statute. United States v. Trident Seafoods Corp. , 92 F.3d 855, 860 (9th Cir. 1996); see also MRO Communications, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1280 (9th Cir. 1999). In this case, that essentially means those costs that are provided for in 28 U.S.C. §§ 1920, which is the general federal cost statute. That means that the district court properly rejected most of Lu-Mar's demands.[2] The following paragraphs will consider specific items raised on appeal. Lu-Mar's attempt to obtain reimbursement for its expenses in retaining expert witnesses was correctly rejected. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442, 107 S. Ct. 2494, 2498, 96 L. Ed. 2d 385 (1987). The clerk of the court failed to make any reference to the request for mediator fees, but Lu-Mar's failure to bring that omission to the attention of the district court waived that issue. See Fed. R. Civ. P. 54(d)(1); Walker v. California, 200 F.3d 624, 626 (9th Cir. 1999). At any rate, nothing in 28 U.S.C. §§ 1920 provides for the costs of a mediator. Lu-Mar cites no authority for the proposition that those costs are recoverable, and we have found none.
 
 
 28
 Lu-Mar also asked for recovery of deposition costs and copying costs. The clerk refused to fix those because, he said, the clerk, himself, can only tax those types of costs when the materials are actually used at trial, and there was no trial. But the district court is not so bound. It can, in its discretion, tax those costs even if the items in question were not used at trial. See Wash. State Dep't of Transp. v. Wash. Natural Gas Co., 59 F.3d 793, 806 (9th Cir. 1995) (deposition costs); HaagenDazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc., 920 F.2d 587, 588 (9th Cir. 1990) (document copies). Similarly, the clerk indicated that special master fees were not taxable. It is true that the cost of the special master had previously been allocated between the parties by the master. But the district court itself does have discretion to tax them. See K-2 Ski Co. v. Head Ski Co., Inc., 506 F.2d 471, 476 (9th Cir. 1974). Unfortunately, the district court does not appear to have exercised its discretion. It simply affirmed"the Clerk's award for the reasons stated in his Order." But, again, those reasons were that the clerk could not tax the costs in question. Thus, the district court erred in this regard because its reasons must relate to discretion, rather than to an inability to tax the costs at all.
 
 CONCLUSION
 
 29
 Lu-Mar believes that because it accepted a Rule 68 offer of judgment it is apodictic that it should receive all of its expenditures on this case, including all costs and attorneys' fees. It is a comforting thought, but it is wrong. The district court was not required to find that Lu-Mar was the prevailing party on all of its theories of the case. It could properly determine that Lu-Mar did not prevail on its Florida theft claim, and deny attorneys' fees.
 
 
 30
 Similarly, the court was not required to award Lu-Mar all of its out-of-pocket expenditures other than attorneys' fees. However, we agree that the district court should have exercised its discretion regarding Lu-Mar's request for costs for document copying, for depositions, and for the special master. Thus, we vacate the district court's decision as to those items and remand for further consideration of them.
 
 
 31
 AFFIRMED in part, VACATED and REMANDED in part.
 
 
 32
 The parties shall bear their own costs on appeal.
 
 
 
 Notes:
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).
 
 
 [1]
 For convenience, we will hereafter refer only to Lu-Mar, but what we hold as to it also applies to Sedacca and Rincon.
 
 
 [2]
 For example, computer research costs are not so listed and were, therefore, properly rejected out of hand.