# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 8, 2009 Session

## STATE OF TENNESSEE EX REL. NANA LANDENBERGER v. PROJECT RETURN, INC.

### Appeal from the Chancery Court for Davidson County
### No. 04-1552-III     Ellen Hobbs Lyle, Chancellor

---

### No. M2007-02859-COA-R3-CV - Filed March 11, 2009

---

In this action brought under Tennessee's False Claims Act, the trial court granted the defendant's motion to set aside its offer of judgment and strike the relator's notice of acceptance. The relator subsequently abandoned the case, and the trial court granted the defendant's motion to dismiss. We affirm the results reached by the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Richard J. Braun and Patricia Crotwell, Nashville, Tennessee, for the appellant, Nana Landenberger.

David M. Rich and Frank Thomas, Nashville, Tennessee, for the appellee, Project Return, Inc.

Michael K. Bassham, Nashville, Tennessee, for the appellant, State of Tennessee.

### OPINION

#### FACTS AND PROCEDURAL BACKGROUND

Project Return, Inc. ("PRI") is a non-profit corporation that contracted with the Tennessee Department of Correction ("TDOC") to provide case management, facilitation, and project management services for the Tennessee Bridges Program, a program designed to help serious and violent offenders transition back into society after their release from prison. Dr. Nana Landenberger, a psychologist, entered into a contract with TDOC to provide curriculum development and offender assessment for the Bridges Program. Dr. Landenberger was to develop a reentry curriculum for use with program participants, conduct initial risk/needs assessments for all program participants, conduct periodic progress assessments of program participants, consult with group facilitators and case managers to assess program interventions, provide consultation regarding program outcome

evaluation, and participate as a member of the Tennessee Bridges steering committee. Her contract services were to be completed in approximately sixteen hours per month.

In May 2004, Dr. Landenberger filed this action as relator[1] on behalf of the State of Tennessee against PRI pursuant to the Tennessee False Claims Act ("TFCA"), Tenn. Code Ann. § 4-18-101 *et seq.* In accordance with the TFCA, Dr. Landenberger gave the Tennessee Attorney General notice of her claims against PRI. The Attorney General elected not to proceed with the relator's action but requested that all pleadings and orders be provided to the Attorney General's office.

In November 2004, PRI moved to dismiss the suit on the basis that the relator failed to plead fraud with sufficient particularity as required by Tenn. R. Civ. P. 9.02. The trial court held PRI's motion to dismiss in abeyance to allow the relator to filed an amended complaint. The relator filed an amended complaint on February 1, 2005. Dr. Landenberger alleged that PRI submitted false claims to the State of Tennessee in violation of the TFCA by submitting invoices that certified compliance with its contract with TDOC when PRI knew that it had not performed its duties under the contract. Dr. Landenberger also alleged that PRI conspired with Rae Ann Coughlin, TDOC's director of prerelease programs, to defraud the State by securing payment on PRI's false claims.

In March 2005, PRI filed a motion to dismiss on the ground that Dr. Landenberger was not an original source within the meaning of Tenn. Code Ann. § 4-18-104(3). PRI also filed a renewed motion to dismiss the amended complaint for failure to plead fraud with particularity. In a detailed order filed on September 1, 2005, the trial court denied PRI's first motion to dismiss based on the original source argument. In an order filed on September 27, 2005, the trial court denied PRI's other motion to dismiss based upon the alleged failure to plead fraud with particularity.

On June 22, 2006, Dr. Landenberger filed a motion to amend her complaint to remove the conspiracy allegations regarding Rea Ann Coughlin.[2] PRI thereafter approached Dr. Landenberger about settling the case. On July 6, 2006, PRI served upon Dr. Landenberger a written offer of judgment, pursuant to Tenn. R. Civ. P. 68, in the amount of $5,000.00. The offer of judgment provided as follows:

> 1. Damages in the amount of Five Thousand and 00/100 Dollars ($5,000.00);
> 2. All Court costs now accrued in this action, and not discretionary costs allowed under Rule 54 of the Tennessee Rules of Civil Procedure.

---

[1]An *ex rel.* suit "is typically brought by the government upon the application of a private party (called a *relator*) who is interested in the matter." BLACK'S LAW DICTIONARY 621 (8th ed. 2004). The Tennessee False Claims Act refers to a private person initiating an action as a qui tam plaintiff. *See* Tenn. Code Ann. § 4-18-104(c)(1). A qui tam plaintiff brings an action "for the king as for himself." BLACK'S LAW DICTIONARY 1282. A qui tam action is "brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." *Id.*

[2]The record does not contain a ruling on this motion.

3. The aforementioned settlement will be made payable in a lump sum.

On July 17, 2006, Dr. Landenberger served notice of acceptance of the offer of judgment.

On July 21, 2006, PRI filed a motion to amend its offer of judgment or, in the alternative, to set the offer of judgment aside and strike the relator's notice of acceptance pursuant to Tenn. R. Civ. P. 60. Each attorney submitted an affidavit detailing his account of the settlement negotiations. The trial court granted PRI's Rule 60 motion, setting aside the offer of judgment and striking the notice of acceptance.[3]

The parties engaged in discovery. Dr. Landenberger failed to appear at several scheduled depositions. On September 21, 2007, counsel for the relator filed a motion for an order requiring Dr. Landenberger to undergo psychiatric evaluation to determine her competence to proceed with the action. The trial court ordered Dr. Landenberger to appear for her deposition on October 2, 2007. Dr. Landenberger again failed to appear. Her attorney advised that Dr. Landenberger had left the country.

On October 4, 2007, PRI filed a motion for contempt and for dismissal of the relator's case with prejudice. In an order dated October 10, 2007, the trial court ordered relator's counsel to state whether counsel intended to prosecute the case without the relator's testimony, any legal authority allowing counsel to prosecute the case without the participation of the relator, and an explanation of the evidence the relator's counsel intended to present. Counsel for the relator filed a response to address the court's concerns. After a hearing on PRI's motion for contempt and motion to dismiss, the trial court concluded that it no longer had jurisdiction to proceed with the case in the absence of the relator. The court therefore dismissed the relator's case with prejudice. The court denied PRI's claim for attorney fees and costs. The relator filed this appeal.[4]

ISSUES ON APPEAL

The relator argues (1) that the trial court erred in granting Rule 60 relief to set aside the offer of judgment after its unqualified acceptance and (2) that the relator's absence did not deprive the trial court of subject matter jurisdiction. In addition to refuting the relator's arguments, PRI asserts that the trial court erred in failing to hold an evidentiary hearing regarding attorney fees and in failing to award PRI its attorney fees and costs, that Dr. Landenberger was not an original source as required by Tenn. Code Ann. § 4-18-104(3), and that the relator failed to plead fraud with sufficient particularity in her second amended complaint.

---

[3] At this point, Dr. Landenberger sought and received the trial court's permission for an interlocutory appeal. This Court denied relator's interlocutory appeal.

[4] We will refer to the appellant as "the relator" even though the actual relator, Dr. Landenberger, has abandoned the case and the appeal is being pursued by her former attorney.

STANDARD OF REVIEW

Our review of a trial court's decision on a Tenn. R. Civ. P. 60 motion for relief is under an abuse of discretion standard. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). A trial court abuses its discretion only when it applies an incorrect legal standard or when it reaches a decision against logic or reasoning that causes an injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under this standard, we are required to uphold the ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Furthermore, "we are not permitted to substitute our judgment for that of the trial court." *Id*. Thus, under the abuse of discretion standard, we give great deference to the trial court's decision. *See Goins*, 104 S.W.3d at 479.

The trial court's findings of fact are reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Review of a question of law is also de novo, but with no presumption of correctness given to the trial court's conclusions. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

ANALYSIS

Proper Plaintiff

PRI argues that the trial court erred in failing to grant its motion to dismiss the action because Dr. Langenberger is not a proper qui tam plaintiff under the TFCA. This argument is without merit.

The Tennessee General Assembly enacted the Tennessee False Claims Act ("TFCA"), Tenn. Code Ann. § 4-18-101 *et seq.*, in 2001. 2001 Tenn. Pub. Acts ch. 367. The TFCA establishes penalties for filing false claims with state, county, or municipal governments. Tenn. Code Ann. § 4-18-103. In addition to authorizing the attorney general and reporter and local prosecuting authorities to investigate and prosecute actions under the TFCA, the act allows a complaint to be filed by a private person or qui tam plaintiff. Tenn. Code Ann. § 4-18-104. The provisions of the TFCA upon which PRI relies appear at Tenn. Code Ann. § 4-18-104(d)(3):

> (A) No court shall have jurisdiction over an action under this chapter *based upon the public disclosure of allegations or transactions* in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the general assembly, comptroller of the treasury, or governing body of a political subdivision, or by the news media, unless the action is brought by the attorney general and reporter or the prosecuting attorney of a political subdivision *or the person bringing the action is an original source of the information*.
>
> (B) For purposes of subdivision (d)(3)(A), "original source" means an individual, who has direct and independent knowledge of the information on which the allegations are

based, who voluntarily provided the information to the state or political subdivision before filing an action based on that information, and whose information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure as described in subdivision (d)(3)(A).

(Emphasis added). PRI argues that Dr. Landenberger is not an original source and that the trial court therefore lacked subject matter jurisdiction in this case. However, according to the language of subsection (A) of Tenn. Code Ann. § 4-18-104(d)(3), the qui tam plaintiff must be an original source only if the action is "based upon the public disclosure of allegations or transactions. . . ."

There are as yet no appellate decisions interpreting the TFCA. We therefore look to decisions interpreting the federal False Claims Act ("FCA") since the federal act contains "original source" provisions similar to those at issue here. The relevant provisions of the federal act state:

(A) No court shall have jurisdiction over an action under this section based upon the *public disclosure of allegations or transactions* in a criminal, civil, or administrative hearing, in a congressional, administrative, or Governmental Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an *original source* of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (emphasis added). The "original source" provisions of the federal act have been interpreted to apply only when there has been a "public disclosure." *U.S. ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 938 (6th Cir. 1997); *see also United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 722 (6th Cir. 1999). If the information upon which the federal FCA claims are based has been publicly disclosed, the relator or qui tam plaintiff must be an original source. *See McKenzie*, 123 F.3d at 939. Conversely, if there has been no public disclosure, a qui tam plaintiff need not show that he is an original source. *Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992). The purpose of § 3730(e)(4) is "to bar parasitic lawsuits based on publicly disclosed information and to prevent payment to would-be relators who have contributed nothing to the exposure of fraud." *U.S. ex rel. Burns v. A.D. Roe Co., Inc.*, 919 F.Supp. 255, 257 (W.D. Ky. 1996), *vacated on other grounds*, 186 F.3d 717 (6th Cir. 1999). As one court put it, in a scheme designed to encourage insiders to blow the whistle on fraud, "there is little point in rewarding a second toot." *Wang*, 975 F.2d at 1419.

Based upon the language of Tenn. Code Ann. § 4-18-104(d)(3)(A) and the federal FCA and its attendant caselaw, we agree with the trial court's conclusion that the federal analysis applies to the TFCA. Thus, there is no requirement that a qui tam plaintiff be an original source if his claims are not based upon a previous public disclosure.

PRI does not argue on appeal that Dr. Landenberger's allegations under the TFCA are based upon a public disclosure. Rather, PRI assumes that the act requires all qui tam claims to be brought by an original source and argues that Dr. Landenberger does not qualify as an original source. As we have concluded that the "original source" requirement does not come into play unless the claims are based upon a public disclosure, the trial court properly denied PRI's motion to dismiss based on its "original source" argument.

In light of our disposition of the other issues presented, we need not address PRI's argument regarding the sufficiency of the fraud allegations in Dr. Landenberger's second amended complaint.

<u>Rule 60 Motion</u>

Perhaps the most difficult issue presented by this appeal is Dr. Landenberger's argument that the trial court erred in granting PRI's motion for Rule 60 relief from the accepted offer of judgment.

We begin by noting the procedurally unusual way in which this issue comes to us. After Dr. Landenberger accepted PRI's offer of judgment, PRI filed a "Motion to Amend Its Offer of Judgment, or in the Alternative, Set Aside the Previous Offer of Judgment and Strike Plaintiff's Notice of Acceptance" citing Tenn. R. Civ. P. 60. The trial court found "that Defendant's Offer of Judgment and Relator's subsequent acceptance did not constitute a valid meeting of the minds, necessitating equitable intervention by this Court under <u>Tenn. R. Civ. P.</u> Rule 60." The procedural wrinkle here arises from the fact that, when it granted PRI's motion for Rule 60 relief, the trial court had not yet entered an actual judgment from which to give relief pursuant to Tenn. R. Civ. P. 60. On appeal, both parties have addressed their arguments to the propriety of the trial court's actions under Tenn. R. Civ. P. 60. Under Tenn. R. Civ. P. 68, if an offer of judgment is accepted, either party may file the offer of judgment and notice of acceptance with the court "and thereupon judgment *shall* be rendered accordingly." (Emphasis added). Sixth Circuit caselaw holds that Rule 68 of the federal rules "leaves no discretion in the district court to do anything but enter judgment once an offer has been accepted." *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991). In light of the mandatory language of Tenn. R. Civ. P. 68 and the implicit recognition of the trial court and the parties that the entry of judgment was essentially automatic, we will review the trial court's actions under Tenn. R. Civ. P. 60.

Before addressing the propriety of the trial court's grant of Rule 60 relief, we find it appropriate to discuss Tenn. R. Civ. P. 68 offers of judgment. Tenn. R. Civ. P. 68 states:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property, or the effect specified in the offer, with costs then accrued. Likewise a party prosecuting a claim may serve upon the adverse party an offer to allow judgment to be taken against that adverse party for the money or property or to the effect specified in the offer with costs then accrued. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, either party may file the offer and notice of acceptance, together with proof

of service thereof, with the court and thereupon judgment shall be rendered accordingly. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall pay all costs accruing after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer.

The rule was copied from Fed. R. Civ. P. 68[5] when Tennessee originally adopted the Tennessee Rules of Civil Procedure. Tenn. R. Civ. P. 68 cmt. 1. It was hoped that "the procedure provided for by this Rule may facilitate the settlement of cases in many instances."[6] *Id.; see also Francois v. Willis*, 205 S.W.3d 915, 917 (Tenn. Ct. App. 2006) ("The purpose of the rule is to promote settlements.")

It has been said that, "[i]f there is any occasion in civil litigation which calls for caution and care by counsel, it is the drafting of a Rule 68 offer." *Sampson v. Embassy Suites, Inc.*, No. CIV. A. 95-7794, 1998 WL 726649, *1 (E.D. Pa. Oct. 16, 1998). Discussing Fed. R. Civ. P. 68, one commentator observed: "Because the rule is cursory in form and does not alert the parties to its many nuances, defendants often are uncertain or misguided about how to draft a Rule 68 offer. Defendants often end up drafting offers that carry unintended consequences." Danielle M. Shelton, *Rewriting Rule 68: Realizing the Benefits of the Federal Settlement Rule by Injecting Certainty into Offers of Judgment*, 91 MINN. L. REV. 865, 867-68 (2007). One such consequence is collateral litigation about the offer. *Id.* at 868.

There has been litigation in Tennessee concerning what is included in a Rule 68 offer of judgment. Most if not all of that litigation has addressed what is included in "costs" assessed by the rule. "Costs" envisioned by Tenn. R. Civ. P. 68 are the costs authorized by statute as assessed by the trial court. *Person v. Fletcher*, 582 S.W.2d 765, 767 (Tenn. Ct. App. 1979). The costs mandated by Rule 68 "are only those that are referred to in Tenn. R. Civ. P. 54.04(1) and not the discretionary costs referred to in 54.04(2)." *Burton v. Fine*, No. E2003-01572-COA-R3-CV, 2004 WL 1541341, *8 (Tenn. Ct. App. July 9, 2004); *see also Jordan v. CSX Transp., Inc.*, No. M1999-01415-COA-R3-CV, 2001 WL 378555, *8 (Tenn. Ct. App. Apr. 17, 2001). Rule 68 costs do not include deposition costs, court reporter fees, expert witness fees, or prejudgment interest. *Francois*, 205 S.W.3d at 917; *Burton*, 2004 WL 1541341, at *8; *Jordan*, 2001 WL 378555, at *8.

---

[5]Fed. R. Civ. P. 68 was adopted in 1938 to encourage settlements. Committee Note to the Preliminary Draft of Proposed Amendment to Federal Rules of Civil Procedure 68, 98 F.R.D. 337, 363 (1983). Fed. R. Civ. P. 68, "which has been amended twice but only in minor respects, has rarely been invoked and has been considered largely ineffective as a means of achieving its goals." *Id.*

[6]Unlike its federal counterpart, Tenn. R. Civ. P. 68 was amended to allow the plaintiff to make an offer of judgment. Tenn. R. Civ. P. 68 cmt. 2.

Under Rule 68, the term "costs" does not cover attorney fees absent a statute including attorney fees as part of costs.[7] *See Person*, 582 S.W.2d at 766-67. In situations where attorney fees are not defined as costs by statute,[8] uncertainty arises as to whether attorney fees are part of the offer of judgment. Nothing in Tenn. R. Civ. P. 68 or Fed. R. Civ. P. 68 requires inclusion of attorney fees in the offer. Nothing prevents their inclusion either. In the ideal offer of judgment scenario, the offer expressly addresses attorney fees. Unfortunately, as in the matter before us, the offer of judgment is often silent on the issue of attorney fees.

There are at least two different approaches used by federal courts when faced with an offer of judgment that is silent as to attorney fees when such fees are not included in the underlying statute's definition of costs. Several circuits have adopted the rule that any ambiguity in an offer of judgment is to be construed against the drafter. *See, e.g., Sea Coast Foods, Inc. v. Lu-Mar Lobster and Shrimp, Inc.*, 260 F.3d 1054, 1059 (9th Cir. 2001); *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 834 (9th Cir. 1997); *Webb v. James*, 147 F.3d 617, 623 (7th Cir. 1998); *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1243 (11th Cir. 2002). The rationale behind this rule is that "it is incumbent on the defendant making a Rule 68 offer to state clearly that attorney fees are included as part of the total sum for which judgment may be entered if the defendant wishes to avoid exposure to attorney fees in addition to the sum offered plus costs." *Nusom*, 122 F.3d at 834. Under Rule 68, the judgment is "to the effect specified in the offer," so the defendant should bear the "brunt of uncertainty." *Id.* It has been stated that, "[b]ecause Rule 68 puts plaintiffs at their peril whether they accept the offer, the defendant must make clear whether or not the offer is inclusive of fees when the underlying statute provides fees for the prevailing party." *Webb*, 147 F.3d at 623. Courts adopting this approach have emphasized that "the plaintiff should not be left in the position of guessing what a court will later hold the offer means." *Id.* The result in most of these cases is that the offeree is permitted to recover attorney fees above and beyond the offer of judgment.[9]

In another group of cases, courts faced with an offer of judgment that is silent as to attorney fees have approached the offer of judgment in the context of contractual principles and have considered extrinsic evidence of the parties' intent. *See Radecki v. Amoco Oil Co.*, 858 F.2d 397, 400 (8th Cir. 1988); *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 454 (5th Cir. 2003). In *Radecki*, defendant sent plaintiff an offer that was silent as to attorney fees; the next day, the defendant sent a clarification of the offer specifying that attorney fees were included in the offer. *Radecki*, 858 F.2d at 399. The plaintiff accepted the initial offer and sought to recover attorney fees.

---

[7]This court has held that an agreement to pay costs does not include attorney fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, No. M2006-02424-COA-R3-CV, 2008 WL 596174, *3 (Tenn. Ct. App. Mar. 4, 2008) (perm. app. granted Sept. 24, 2008).

[8]Some federal statutes, such as many civil rights and copyright laws, include attorney fees as costs. *See* Shelton, 91 MINN. L. REV. at 897.

[9]While adopting the rule of construing any ambiguity against the offeror, the court in *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 392 (7th Cir. 1999), found no ambiguity in the language of the offer even though it did not mention attorney fees.

*Id.* The court observed: "Rule 68 does not require a laundry list of the elements of relief included within an offer or specific mention of attorney fees, and it runs counter to the purpose of Rule 68 to assume that forms of relief not mentioned are not intended to be included within the sum offered. Rule 68 is designed to encourage complete settlement, not simply to resolve the issues of liability and remedies." *Id.* at 401. Since the offer was silent as to attorney fees, the court decided to "resort to factors outside the words themselves." *Id.* at 400. Finding that the settlement negotiation amounts included attorney fees, the second offer was a clarification (not a modification) of the initial offer, the wording of the initial offer indicated a lump sum settlement, and the offer exceeded the damages claimed by plaintiff, the court found that the defendant intended the offer to include attorney fees. *Id.* at 401-02. The court next determined that the purported acceptance was based upon the offer excluding attorney fees. *Id.* at 403. Therefore, the court concluded that there was no mutual assent and no agreement. *Id.* In *Basha*, the court concluded that, although the offer "does not expressly address attorney's fees, we agree with the district court that the circumstances surrounding the offer, if not the text itself, strongly support the view that the parties intended to settle all claims, including those for attorney's fees." *Basha*, 336 F.3d at 453-54.

While acknowledging that both approaches to this issue have their strengths, this court is inclined to follow the view that an offer that is silent as to attorney fees is inherently ambiguous and that it is appropriate for a court to consider extrinsic evidence regarding the intent of the parties. Under Tennessee law, a settlement agreement is a contract between the parties to the litigation, subject to the rules of contract interpretation. *See Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 385 (Tenn. 1996); *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). A contract's language "is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way." *Gredig v. Tenn. Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). When a contractual provision is ambiguous, a court is permitted to look to extrinsic evidence to determine the parties' intent. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006); *S. Ry. Employees Credit Union v. Thornburg*, 680 S.W.2d 791, 792 (Tenn. Ct. App. 1984). In the present case, PRI's offer of judgment made no mention of attorney fees. We find the offer ambiguous in that it is unclear whether the offer includes attorney fees or not. In light of this ambiguity, it was permissible for the trial court to consider extrinsic evidence in the form of attorney affidavits.

We review the trial court's action in granting Rule 60 relief from the Rule 68 judgment under the abuse of discretion standard. *Goins*, 104 S.W.3d at 479. Tenn. R. Civ. P. 60.02(1) allows a trial court to grant relief from a judgment based upon "mistake, inadvertence, surprise or excusable neglect." The trial court considered the affidavits of the attorneys regarding the settlement negotiations. PRI's attorney's affidavit includes the following statements:

> During that conversation [on June 28, 2006] I made it clear that Defendant intended the offer to be all-inclusive to avoid further costs of litigation. . . . Inadvertently, I failed to include text in the offer indicating that it was inclusive of attorneys fees... . During that conversation [on July 10, 2006], I repeatedly informed Plaintiff's attorney that the Offer was all-inclusive. . . . Plaintiff's counsel acknowledged and understood

the intended terms of Defendant's Offer of Judgment. . . . At that time [on July 19, 2006, after PRI had received the notice of acceptance], Plaintiff's counsel mused that the Notice of Acceptance must have come as a surprise and that he now intended to pursue payment of his attorney's fees under the False Claims Act. He acknowledged during that conversation that I and Project Return, Inc. intended for the Offer of Judgment to be all-inclusive as a nuisance-value settlement.

In his affidavit, Dr. Landenberger's attorney denied that there was any discussion about attorney fees during the conversation on July 10, 2006. He stated that, in the attorneys' conversation on July 19, 2006, PRI's attorney "expressed that he was shocked and did not anticipate a petition for attorney's fees." The trial court concluded that the offer of judgment and acceptance "did not constitute a valid meeting of the minds, necessitating equitable intervention by this Court" under Rule 60.

The relator argues that the trial court erred by awarding Rule 60 relief based upon a mistake of law–PRI's purported ignorance of the legal consequences that could flow from the acceptance of its offer of judgment. It is indeed "well settled that ignorance of an attorney with respect to the applicable law or rules is not the type of mistake that invokes the relief provided for under Rule 60.02(1)." *Holiday v. Shoney's S., Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2001). We have concluded, however, that the attorney affidavits provided ample basis for the trial court to find that the failure to mention attorney fees in the offer of judgment was an inadvertent omission on the part of PRI's attorney, not a mistake of law. We cannot conclude that the trial court applied "an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Eldridge*, 42 S.W.3d 82 at 85. We affirm the trial court's ruling on the Tenn. R. Civ. P. 60 motion.

### Proceeding without a Qui Tam Plaintiff

The trial court dismissed this case on PRI's motion based upon Dr. Landenberger's abandonment of the case. The relator's attorney argues that the case should have been allowed to continue. We disagree.

An action may be brought under the Tennessee False Claims Act by the attorney general and reporter, a local prosecuting authority, or a qui tam plaintiff. Tenn. Code Ann. § 4-18-104. When a qui tam plaintiff initiates such an action, the qui tam plaintiff is required to give notice to the attorney general and reporter or local prosecuting authority. Tenn. Code Ann. § 4-18-104(c). The attorney general or local prosecutor then has 60 days in which to decide whether it wishes to intervene in the action. *Id.* In this case, the attorney general elected not to intervene. In that situation, "the qui tam plaintiff shall have the same right to conduct the action as the attorney general and reporter or prosecuting authority would have had if it had chosen to proceed under subsection (c)." Tenn. Code Ann. § 4-18-104(f)(1).

As the relator emphasizes, an action under the TFCA is brought for the primary benefit of the state, and the state is the real party in interest. *See United States v. Health Possibilities, P.S.C.*, 207

F.3d 335, 341 (6th Cir. 2000). In the event a TFCA action is successful, a portion of the proceeds of the suit go to the state, and a portion to the qui tam plaintiff. Tenn. Code Ann. § 4-18-104(f). We know of no authority, however, that would allow a qui tam plaintiff's attorney to proceed with a TFCA suit in the absence of the qui tam plaintiff or the intervention of the attorney general or local prosecutor. This would amount to a lawsuit without a plaintiff. Even if the case is being prosecuted for the benefit of the state, there must be a party present to represent the state–either a qui tam plaintiff or the state itself as represented by the attorney general or local prosecutor. Since the attorney general chose not to intervene in this case, the withdrawal of Dr. Landenberger left no party to prosecute the case. Pursuant to Tenn. Code Ann. § 4-18-104(c)(1), an action brought by a qui tam plaintiff "may be dismissed only with the written consent of the court, taking into account the best interests of the parties involved and the public purposes behind this chapter." In light of the absence of a qui tam plaintiff or the state as a party, the trial court acted properly in dismissing the action.[10]

<u>Attorney Fees</u>

PRI argues that the trial court erred in not holding an evidentiary hearing on the issue of attorney fees and in failing to award it attorney fees.

Tenn. Code Ann. § 4-18-104(g)(9) addresses the award of attorney fees to a defendant in a TFCA action:

> If the state, a political subdivision, or the qui tam plaintiff proceeds with the action, the court *may* award to the defendant its reasonable attorney's fees and expenses against the other party that proceeded with the action if the defendant prevails in the action and the court finds that the claim was clearly frivolous, clearly vexatious, or brought solely for purposes of harassment.

(Emphasis added). Because the statutory language makes the award of attorney fees discretionary, we review the trial court's decision under the deferential abuse of discretion standard. *State ex rel. Carney v. Crosby*, 255 S.W.3d 593, 602 (Tenn. Ct. App. 2008).

In denying PRI's request for attorney fees, the trial court made the following findings:

> The results of discovery conducted by the plaintiff . . . are that documents that were specifically the responsibility of the defendant to generate under its contract with the State, such as risk assessments, needs assessments, reentry plans, were not present in the file or were generated by the offenders themselves. Depositions of former employees of the defendant also revealed that the defendant's case management was grossly incompetent. The record establishes that there is sufficient evidentiary support for the allegations of the complaint such that the defendant is unable to make a

---

[10] For the reasons discussed above regarding the original source provisions, we disagree with the trial court's reliance on Tenn. Code Ann. § 4-18-104(d)(3).

probable cause showing that the plaintiff clearly brought the lawsuit for vexation or harassment, or that the lawsuit is clearly frivolous.

Although the trial court made an express finding that the claim was not clearly frivolous, vexatious, or brought solely for purposes of harassment, PRI argues that the trial court erred in making such a finding without holding a separate hearing. The statutory language does not contain such a requirement. Moreover, the record does not contain a transcript of the relevant hearing and does not otherwise reflect that PRI requested an additional hearing or the opportunity to put on evidence at the time of the trial court's ruling. We find no abuse of discretion in the trial court's denial of attorney fees to PRI.

The judgment of the trial court is affirmed. Costs of appeal are assessed equally against both parties.

_____
ANDY D. BENNETT, JUDGE